WILLIAM NEWSOM, ex'or., plaintiff in error, vs. JOHN JACKSON, defendant in error.

26  241<br>117  598

[1.] Parol evidence inadmissible when there is written evidence of the contract within the power or control of the party.

[2.] To make a third person not a party to the contract liable upon a false representation as to the solvency of another, it must appear *at least* 1st, that the entire credit was given upon these representations; 2d., If it were not a single transaction, then there must be some reasonable certainty as to the amount of the credit and the length of time to which it should extend; and 3d, that the party giving the credit was not himself the victim of blind credulity or overweening confidence.

Deceit, from Baker county. Tried before Judge ALLEN, May Term, 1858.

John Jackson brought his action of deceit against William Newsom, executor of Cæsar A. Savage, alleging that he was damaged by the representations of Savage, to wit—that one Pembroke P. Bond was solvent and responsible, and that thereupon he had credited the said Bond for merchandize, &c., for which said Bond never paid him, and is insolvent and unable to pay; that said Savage represented that said Bond owned several negroes and other property, and that said Savage perpetrated a fraud upon plaintiff, and was interested in so doing, &c.

The jury found a verdict for plaintiff; whereupon the defendant moved for a new trial upon the following grounds:

1st. That the Court erred in not sustaining the demurrer of defendant to plaintiff's declaration, on the ground that said declaration contained no sufficient cause of action.

2d. Because the Court erred in permitting the evidence of Pembroke P. Bond and Israel Bond to be read to the jury, against the objection of defendant's counsel, as to the negro property in possession of Pembroke P. Bond, being the separate property of the wife of Pembroke P. Bond, or any part of said answer, going to show that the wife of Bond had a

separate property, or that the same was secured and settled on her.

3d. Because the Court erred in permitting Lott Warren to testify against the objection of defendant, that Savage, after P. P. Bond quit business in Albany, took an assignment from Bond of his account for work done in his shop.

4th. Because the Court erred after charging the jury in the language as requested in writing, by defendant; that if at the time the representations were made by Savage, no account was made or intended to be made by Bond, but was subsequently made from day to day, week to week, and monthly, from the first of January, 1847, or from the time the account was opened until closed, then the defendant is not liable on the representations charged in addition thereto, "unless said Savage, by his representations, intended to cover such account as might be made by Bond for the whole year."

5th. Because the Court erred in charging the jury that they must be satisfied, from the testimony, that the defendant made the representations charged in the declarations falsely and fraudulently.

That the defendant, at the time of making the representations, knew them to be false.

That the defendant, in making the representations, either intended to benefit himself or to deceive or injure the plaintiff.

That the plaintiff must prove that he acted on the faith of said representations, having sold goods on account of them, and thereby lost his debt.

That if the jury believe, from the testimony, that Savage, at the end of the year after the account was opened with plaintiff, claimed all bonds, notes and accounts, and took possession of them, it is a circumstance they may consider in determining whether or not there was collusion between Bond and Savage to defraud plaintiff.

6th. Because the verdict was contrary to the charge of the

Newsom, ex'or., vs. Jackson.

Court in this: that they must be satisfied defendant represented falsely and fraudulently.

That if the representations of defendant, on which plaintiff relies, in regard to Bond's being good, stated no amount for which he was good, then plaintiff cannot recover. That if at the time no account was made or intended to be made, but was afterwards made daily, weekly and monthly, from the time it opened until it closed, then the defendant is not liable on the representations unless they were made to cover the account for the whole year.

That if after representations and while the account was being made, plaintiff had other sources and opportunities to learn the condition of Bond, whether he was fit to be trusted, and neglected so to do, but blindly trusted to the representations of defendant, he cannot recover.

That if he regarded defendant's representations as security or as a promise to pay the debt of Bond, then he cannot recover.

7th. Because the verdict of the jury was contrary to evidence.

8th. Because the verdict was contrary to law.

9th. Because the verdict was contrary to the weight of evidence.

### Brief of evidence.

Pembroke P. Bond says he moved to Albany about first of February, 1847, and soon after opened an account with plaintiff. I proposed it, and he didn't object. Don't know how long it was before he became aware that the negroes in my possession didn't belong to me. Defendant and other persons in Albany knew my pecuniary situation, and plaintiff had as good chance as other people in Albany to find out. Paid plaintiff part of his debt. I told plaintiff, near the end of the year, the negroes belonged to my wife's trustees. At the time I went to Albany I owed more than I could pay.

Defendant was aware of it, and that the negroes were my wife's. He came to Augusta and advised me to move to Albany; stood my security on a bail process in Augusta, and borrowed money to enable me to remove.

Israel Bond said, at the time referred to, P. P. Bond was embarrassed pecuniarily, and owned no property. Defendant was acquainted with his circumstances; supplied him with money to remove, and became surety for him on bail bond about the time. Defendant asked me if Bond's wife's property was secured to her; and I exhibited to him the marriage settlement showing the fact.

James M. Thornbury said he was clerk for plaintiff; sold goods to Bond and his family on defendant's representations; that defendant came into the store, said his brother-in-law, Bond, was coming to Albany to do business in carriages, and he wished Jackson would help him in custom all he could: and in return Bond would do all his trading with Jackson, and that Bond was perfectly responsible, as he owned in his own right eight or ten likely negroes. Bond closed his account by note (which was exhibited) and it has never been paid, to witness's knowledge. Thinks after he closed his account by note, his credit was discontinued. Plaintiff considered Savage as security for Bond, and did not trouble himself with Bond's habits or actions.

Lott Warren said, when Bond came to Albany he loaned Bond a set of blacksmith's tools, and when Bond left he went after them, and found them claimed by Savage. Got about half of them by identifying them. Owed Bond a small account, which was in Savage's hands, who claimed to have taken it in order to indemnify himself, saying he was a large loser by Bond. He was idle, extravagant, and imprudent, but he would have trusted him on the representation defendant made to plaintiff.

S. D. Irwin called on defendant for rent of the shop, used by Bond; defendant refused; said he was largely loser for board, &c.

Platt testified he was in debt when he went to Albany; was extravagant, reckless and imprudent.

The Court overruled the motion for a new trial, and defendant, by his counsel, excepts.

Lyon & Clark, for plaintiff in error.

Morgan, for defendant in error.

*By the Court.*—Lumpkin, J. delivering the opinion.

[1.] The judgment of reversal in this case is put upon the ground that the witnesses, P. P. Bond and J. Bond, were permitted *to* testify against the objections of defendant's counsel. That the negroes in the possession of P. P. Bond were the separate estate of his wife, and not liable to the husband's debts, whereas the contract of settlement was certainly the highest and perhaps the only proof which was admissible as to the title of this property. In the narrative which is given in the bill of exceptions of the facts which transpired on the trial of this cause, no statement is made that the defendant objected at the time to the introduction of this testimony. But in the motion for a new trial, it is set forth that the objection was made. And in the judgment of the Court overruling the motion, on all the grounds taken in it, Judge Allen certifies that, on the trial of the cause, he "ruled and charged, and refused to charge, as is stated in the grounds taken for a new trial." A wise precaution—the omission to observe which has worked an injury, no doubt, in some of the cases which have come before the Court since the Act of 1856 was passed.

Upon this ruling, then, there can be no doubt the defendant is entitled to a new trial. The testimony of the two Bonds constitutes one of the most material facts in the cause; for the main misrepresentation imputed to Savage is, that he asserted that P. P. Bond was the owner of the slaves

in his possession. Whether he is or is not, depends upon the deed of settlement; parol evidence of the contents or legal effect of which was allowed to go to the jury.

This is an action of deceit, and it is exceedingly questionable whether it survives against the legal representive of Cæsar A. Savage. Had the property of Jackson been added to the estate of Savage, as in cases of conversion, the suit might have survived, though sounding in *tort*. But it is not pretended that such was the nature of the transaction. The writ charges no collusion or combination for this purpose; but we pass this point by, as it does not seem to have been directly decided by the Court below.

[2.] Mr. Butler, in the very thorough argument which he submitted in behalf of the plaintiff in error, has, we think, gone very far to establish the following propositions: That the case of *Pasley vs. Freeman (3 T. R.* 51, *2 Smith's Lead, Cas. 55)* and the cases following that decision, do not go the length of sustaining this action. All these cases were confined to a single transaction, and the liability was not extended beyond it; and not one of them, like this, sought to bind the defendant during the business transactions of eleven months; and for an unrestrained credit given on an unlimited account, *Haycraft vs. Geary,* 2 *East* 92; *Eyre vs. Dunsford,* 1 *East* 318; *Tapp vs. Lee,* 3 *Bos. and Pull.* 367; 1 *Taunton* 563.

That in the case at bar there was an utter want of diligence, such as was incumbent on the plaintiff to use; and his negligence was in no manner caused by the Act or practices of the defendant. That where the affirmation is such as to leave the other party free to exercise his own judgment or prosecute his own inquiries in order to ascertain the truth, and when by common prudence he might protect himself against imposition, it is his own fault if he fail to do so, and no right of action arises. 1 *Story's Eq. Jur. sec.* 199; 2 *Kent's Com.* 485,487; *2 Parsons on Contracts* 268; *Sug. on Vend* 2, 3, 4: *Peasley vs. Freeman,* 3 *T. R.* 51; *Sanders vs.*

*Hallerman,* 2 *Iredell* 34; *Vernon vs. Keys,* 12 *East* 632; *Duke of Beaufort vs. Neeld,* cited in note to *Burns' Legal Maxims,* top p. 490; *Gallager vs. Bunnel,* 6 *Com.* 352; *Salem India Rub. Co. vs. Adams* 23 *Pick.* 265; *Downs vs. King,* 1 *Stark R.* 75 *(12 E. C. and R.)* If a tradesman gives an indiscreet and ill-judging credit, he cannot make the referee answerable for any loss occasioned by it. 5 *Carr and Pa.* 363 *(Corbett vs. Brown; )* and that the amount, for which the representation intends to say, the person for whom it is made is good, should appear with reasonable certainty in the representation.

What are the facts here? Jackson doing business in the same place with Bond, and having daily opportunities of seeing his management; at no time and no where, used any effort to ascertain the true condition of Bond or state of his circumstances. But in the language of one of the witnesses (Thornbury) relying on Savage as security for Bond, continued to credit Bond for nearly a year, intending to hold Savage liable for the price of the goods. I need hardly remark that if this were the understanding, that Savage had become security for Bond, then the case is clearly within the statute of frauds, and this suit cannot be maintained.

Neither Courts of Equity nor Courts of Law will aid parties who will not use their own sense and discretion in matters of this sort. 1 *Story's Eq. Jur.* 199.

Chancellor Kent (2 *.Com.* 485, 487) says: " The common law affords to every one reasonable protection against fraud in dealing; but it does not go to the romantic length of giving indemnity against the consequences of indolence or folly, or a careless indifference to the ordinary and accessible means of information. It reconciles the claims of convenience with the duties of good faith, to every extent compatible with the interests of commerce." The adjudged cases coincide with the elementary authorities as to these principles; and that, too, as between vendor and vendee. Should not a

still stricter rule be applied and enforced when it is sought to charge a third person for the debt or default of another?

*Pasley and Freeman* was the first case where an action was sustained upon a false representation made by a third person, and one who was not a party to the contract; an opinion not unanimous, but in which there was a divided Court, made in 1789, several years after the date even of our adopting statute, and many years subsequent to the Revolution; one which has been repudiated by many able Courts and Judges, cordially supported by none, and very grudgingly by those who have followed it as a precedent. The principles of which were finally discarded by the British Parliament as an evasion, if not a repeal, *pro tanto,* of the 4th section of the Statute of Frauds; we can hardly feel ourselves bound to rely upon it in this State. And however anxious we may be to frown down any violations of the rules of morality in the dealings which men have with each other, still something more than a departure from these rules is necessary to maintain an action at law.

In ninety-nine cases out of a hundred, the person giving the credit does not look to the referee; for if he did, he would see to it that he was bound by some writing for the undertaking of the other. He does not require this for the simple reason that he knows the referee would refuse to become security. It is the last thing *he* intends to do. Indeed, this and all such cases are an after thought. An attempt to enforce a liability that never existed, or else to charge one upon a contract void by the statute.

                              Judgment reversed.