# Lumbermen's Mutual Insurance Co. v. Eliza J. Bell, Sole Executrix of James Bell, deceased, doing Business in the Name of James Bell.

1. INSURANCE—*Proofs of Loss Sworn to by an Agent.*—A person insured against loss by fire may authorize another by power of attorney to make out for him and swear to the proofs of loss in case of fire.

2. SAME—*Proof of Loss, by Whom Made.*—Where a policy requires the assured to furnish proofs of loss, signed and sworn to by him, the proof should be so signed and sworn to, unless there is some legal excuse for not doing so. Absence from the State at the time of the loss and a failure to return in time, is a sufficient legal excuse, and in such cases the proofs may be signed and verified by his agent having charge of his business.

3. SAME—*What Mistakes and Omissions do not Avoid the Policy.*
—Where an executor, wishing to procure an insurance upon the property of the estate, relied upon the agents of the company to effect the same in the name of the estate, but the company, through its agent, with knowledge of the facts, by carelessly omitting to write the words " estate of " in the proper place, issued the policy in the name of such deceased person, no deceit having been practiced, or the hazard in any way increased, it was held not to exonerate the company from liability to pay a loss occurring under the policy, and that an action therefor was properly brought in the name of the executor.

4. COSTS—*For Additional Abstracts.*—In this case, a motion for costs for an additional abstract prepared by the appellee was allowed.

*Power of attorney referred to in the opinion:*

" Know all men by these presents, that I, Eliza J. Bell, of Cobden, in the county of Union, in the State of Illinois, executrix of the last will and testament of James Bell, deceased, have made, constituted and appointed, and by these presents do make, constitute and appoint George T. Adams my true and lawful attorney, for me, and in my name, place and stead, to sign and receipt for moneys paid to me by the following insurance companies for loss incurred at Ullin, Illinois, by fire, June 4, 1891, to wit: Manufacturers Mutual Insurance Company of Batavia, Illinois; Lumbermen's Mutual Insurance Company of Chicago, Illinois. \* \* \*

Giving and granting unto my said attorney full power and authority to do and perform all and every act and thing whatsoever requisite and necessary to be done in and about the premises as fully to all intents and purpose as I might or could do if personally present, with full power of substitution and revocation, hereby ratifying and confirming all that my said attorney shall lawfully do or cause to be done by virtue thereof.

Witness my hand and seal this June 25, 1890.

ELIZA J. BELL, (SEAL.)<br>Sole Executrix of James Bell, deceased."

(Acknowledgment.)

**Assumpsit,** on a policy of insurance. Error to the Circuit Court of Union County; the Hon. JOSEPH P. ROBARTS, Judge, presiding. Heard in this court at the August term, 1895. Affirmed. Opinion filed March 7, 1896.

MYRON H. BEACH and DODD & PICKRELL, attorneys for plaintiff in error.

The furnishing of preliminary proofs, where a loss has been sustained, is a condition precedent, without compliance with which no recovery can be had, and a strict compliance is absolutely essential to recovery. 2 May on Insurance, 1076; 2 Biddle on Insurance, 263.

Regardless of whether or not Iott & Son and Candee were the agents of the insured, the retention of the policy by the insured, without calling the attention of the company to the errors contained in it, estops her to deny that Candee acted without authority in making the representation that James Bell was the insured.    Goddard v. Monitor Mut. Fire Ins. Co., 108 Mass. 56.

The plaintiff sued upon the policy, and the court can not alter the contract as therein expressed.    Tibbetts v. Hamilton Ins. Co., 3 Allen (Mass.) 568.

However unfortunate this may be for plaintiff, he accepted the policy in its present shape, and can not complain that he has been misled by it.    Barrett v. Union Ins. Co., 7 Cush. (Mass.) 175.

In this view of the case the application becomes unimportant, as does also the question whether Gleason was the plaintiff's or defendant's agent.    It is decisive of the case that the policy which the plaintiff accepted without objection or attempt to have any mistake corrected can not be applied to the building which was destroyed by fire.

If a third person, without any authority from another person, assumes to act for his benefit in making a contract, and he adopts such acts and accepts the contract, there can be no reason why such person so accepting should not be held to adopt all the acts and representations by which the contract was consummated.    He is not bound to accept the acts of such third person, but if he does so he must accept them as a whole.    In such case no question of excess of authority can arise, for no authority was given, and the subsequent ratification or adoption is equivalent to a prior command to obtain the contract in the way it was first obtained.    In addition to the case already cited, this view is sustained by the following authorities :   Garner v. Mangram, 93 N. Y. 642; Morse v. Ryan, 26 Wis. 356; Wilson v. Tunman, 6 M. & G. 236 (46 E. C. L.); Fitzsimmons v. Joslen, 21 Vt. 142; Carpenter v. American Ins. Co., 1 Story 57; Augusta Insurance Co. v. Abbott, 12 Md. 348.

As to the nature of the misrepresentation, it is immaterial

whether a disclosure of the actual facts would have caused the company to raise the rate or refuse the risk or not.

The purpose for inserting a warranty by the assured is wholly immaterial to the question. Anderson v. Fitzgerald, 24 Eng. Law and Eq. 1; Allen et al. v. German-American Ins. Co., 123 N. Y. 6; Wilson v. Conway Ins. Co., 4 R. I. 141; Wood v. Hartford Ins. Co., 13 Conn. 533; Protection Ins. Co. v. Horner, 2 Ohio St. 542; Dewees v. Manhattan Ins. Co., 34 N. J. 243.

If it is claimed that the error in the policy was the result of a mutual mistake the proper remedy is a reformation of the policy in equity. The plaintiff sues upon the policy, and the court can not alter the contract as therein expressed. Tibbits v. Hamilton Ins. Co., 3 Allen (Mass.) 569; Goddard v. Monitor Fire Ins. Co., 108 Mass. 56; The German Fire Ins. Co. v. Gueck, 130 Ill. 345; Keith v. Globe Ins. Co., 52 Ill. 518.

Is Candee to be deemed in law the agent of defendant, so that it was bound by his knowledge? The delivery of the policy to Iott & Son, before payment of premium, and the allowance by the company to Iott & Son of a commission, and the sharing by Iott & Son of that commission with Candee, are not facts sufficient to constitute them agents of the company in making application for and issuing the policy in suit. Such acts might, under certain circumstances, make them agents for the sole purpose of delivering the policy and collecting the premium, but for that purpose and for no other. Lycoming Fire Ins. Co. v. Rubin, 79 Ill. 402; Ben. Franklin Ins. Co. v. Weary, 4 Brad. 74; Fame Ins. Co. v. Mann et al., 4 Brad. 485; Same v. Same, 10 Brad. 545; Newark Fire Ins. Co. v. Sammons, 11 Brad. 230; Same v. Same, 110 Ill. 166; Kings County Fire Ins. Co. v. Swigert, 11 Brad. 590; Security Ins. Co. v. Mette et al., 27 Ill. App. 324; Commercial Ins. Co. v. Ives et al., 56 Ill. 402; Lycoming Fire Ins. Co. v. Ward, 90 Ill. 545; Union Ins. Co. v. Chipp, 93 Ill. 96; Allen et al. v. German American Ins. Co., 123 N. Y. 6; Mellen v. Hamilton Fire Ins. Co., 17 N. Y. 609; Millville Mutual M. & F. Ins. Co. v. Collerd, 9 Vroom (N. J.) 486; Schomer et al.

v. Hekla Fire Ins. Co., 50 Wis. 575; Goddard v. Monitor Fire Ins. Co., 108 Mass. 56; Wood v. Firemen's Ins. Co., 126 Mass. 316; Hamblet v. City Ins. Co., 36 Fed. 118, 122 and 123; 1 May on Ins., Secs. 122, 122a, 123 and 213; 2 Beach on Ins., Secs. 1066 and 1067; Sellers v. Com. Fire Ins. Co. (Ala.), 16 So. 798; E. Texas Fire Ins. Co. v. Brown (1891), 18 S. W. 713; E. Texas Fire Ins. Co. v. Blum, 76 Texas 653; 13 S. W. 572.

Green & Gilbert, attorneys for defendant in error.

There can be no question but what plaintiff can sustain an action at law upon the policy in question.

Where an instrument, by accident, mistake or design has been made, or is payable, to a person by a wrong or assumed name—any name different from such person's true name—such person need not go into a court of equity to correct the instrument, but may sue thereon at law, in his true name, averring that the instrument was made to him in and by the name appearing therein. O'Brien v. People, 41 Ill. 459; Graves v. People, 11 Ill. 542; N. Y. African Society, etc., v. Varick, 13 Johnson 38; O'Brien v. The People, 41 Ill. 456.

Information as to the death of James Bell was neither " material to the risk," nor avoided the policy. Wood on Fire Ins., Secs. 199, 235, 245; Ins. Co. v. Robinson, 98 Ill. 326.

Defendant did have notice, through its special agents, Iott & Son and Candee. Keith et al. v. Globe Ins. Co., 52 Ill. 518; Commercial Ins. Co. v. Ives, 56 Ill. 402; Union Ins. Co. v. Chipp, 93 Ill. 96, 100; Lycoming Fire Ins. Co. v. Ward, 90 Ill. 545; Thomas v. Fame Ins. Co., 108 Ill. 109; Phœnix Ins. Co. v. Whiteleather, 34 Ill. App. 60.

Defendant company is estopped from claiming Iott & Son and Candee were not its agents. Lycoming Ins. Co. v. Ward, 90 Ill. 549; Indiana Ins. Co. v. Hartwell, 24 N. E. Repr. 100; Daniel's Neg. Instruments (2d Ed.), Sec. 838; Thomas v. Fame Ins. Co., 108 Ill. 110; Herman's Law of Estoppel, Ch. 11, Secs. 320, 321, 328, 336, 480, 482, 484.

The proofs of loss were sufficient in law; or defects were waived, if defective.

They were, in fact, in strict compliance with the policy, under the strict letter of the law. Wood on Fire Ins., Sec. 413, p. 693–695; German Fire Ins. Co. v. Grunert, 112 Ill. 68; O'Connor v. Hartford Ins. Co., 31 Wis. 160; Sims v. State Ins. Co., 47 Mo. 54; Ayers v. Hartford Ins. Co., 17 Iowa 178; Pratt v. N. Y. Cent. Ins. Co., 55 N. Y. 505.

MR. PRESIDING JUSTICE GREEN DELIVERED THE OPINION OF THE COURT.

Defendant in error recovered judgment against plaintiff in error for $2,091.25 damages and costs of suit, for loss by fire on mill property claimed to have been insured by policy No. 5947, issued by plaintiff in error, on April 27, 1890, insuring James Bell against loss or damage by fire to "Bell's Mills, James Bell, Ullin, Ill.," in the aggregate sum of $2,000, for one year. By the terms of the policy, $20,000 total insurance was permitted.

No question is made that the amount of damages was too large if plaintiff had the legal right to maintain the suit, but it is urged that the court so erred in its rulings touching the admission of evidence, in giving, modifying and refusing to give instructions, as to require a reversal of the judgment, and finally that the policy insured James Bell against loss, and he was dead at the time policy was issued, hence the policy was void and his executrix could not maintain a suit thereon; also that the proof of loss was not made by plaintiff below, but by her attorney in fact. There was no error in giving the instructions which were given, or in modifying those which the court modified before giving, or in refusing to give those for defendant which were refused. And there was no objection made to, or exception to the reading of the depositions of witnesses Candee, Iott and Williams, and exhibits, and to a few only of the other questions which were objected to, were specific objections made, and the court did not err in its ruling admitting the answers to such questions. The evidence offered

on behalf of defendant to which plaintiff made specific objections, was properly refused by the court. We find no reversible error in the rulings of the court in admitting, or refusing to admit evidence. The proof of loss which the policy provided should be signed and sworn to by the assured was full and accurate, and in form and substance as required by defendant corporation, but it was signed and sworn to by "George T. Adams, attorney in fact for Eliza J. Bell, executrix of James Bell, deceased," and it is claimed that the power of attorney did not authorize Adams to make and subscribe to this proof, and the provision of the policy requiring the proof of loss to be signed and sworn to by the assured not having been complied with, no recovery could be had. We think the letter of attorney which accompanied the proof of loss by its terms gave Adams the power, on behalf of said executrix, to sign and swear to for her, as her attorney in fact, such proof. The evidence shows she was absent from the State when the fire occurred and remained absent for several months thereafter. She had no knowledge of the fire until after it took place, or of what insurance or policies she had, or in what companies. Nor had she in her possession, or seen any of the policies. Adams was the general agent of plaintiff, her general superintendent, having charge of her mill and of the entire business connected therewith. He received and paid for this policy and the other policies, and had possession of them for her and as her agent. He was present at the fire and knew what was burned and the amount of the loss thereby occasioned. No one was better able to make the proof of loss and inform defendant fully and accurately of all the facts which such proof was designed to furnish. Where the policy requires the assured to furnish proofs signed and sworn to by him, the proof should be so signed and sworn to unless there is some legal excuse. His absence at the time of the loss and failure to return in time, is a sufficient legal excuse, and in such case, the proofs may be signed and verified by his agent having charge of his business. German Fire Insurance Co. v. Grunert, 112 Ill. 68; Woods'

Fire Insurance, Sec. 43. Under the facts proven and the law applicable thereto, a sufficient legal excuse is established on behalf of plaintiff for not signing and swearing to said proof in person, and the same was sufficient when signed and sworn to by her agent, or attorney in fact.

The only question remaining necessary to decide is: Did the defendant in error have a legal right of action as executrix of James Bell, deceased? James Bell died testate January 5, 1889. At the time of his death, Candee, an insurance agent, was carrying for him $20,000 insurance on this same mill property. In and by his will James Bell devised to his wife, Eliza J. Bell, the legal fee simple title to said mill property, to sell and dispose of in her discretion, and divide the proceeds between herself and children, with authority and special request to her to continue to operate the mill and carry on the mill business after his death until she could sell the same to advantage. He nominated his wife sole executrix, without bond. After Bell's death the business was carried on by Eliza J. Bell, executrix, in the name of "James Bell." All letters, correspondence, checks on bank accounts were signed and addressed "James Bell;" in fact, the entire business was conducted in that name. The death of James Bell, the terms of his will, the real condition of the ownership of the mill property, and that the business was so carried on in the name of "James Bell," were facts well known to Candee, an insurance agent, who was, immediately after Bell's death, directed by the executrix to continue the insurance, and the $20,000 insurance on the mill property he did have continued. As policies would expire he would send notices addressed to the executrix by her business name, "James Bell," and they would be returned in the same name, with request to continue, and the insurance was continued and policies sent to her in the name "James Bell," Candee knowing that where so addressed it meant Eliza J. Bell, executrix. She paid the premiums upon accounts rendered in that way. When Candee agreed with a person to carry a certain amount of insurance and found the amount was too large to place in his own companies he was in the habit of obtaining policies

from Iott & Son, in companies they represented, upon applications sent by him to them in pursuance of an agreement between them that upon policies so sent to him they would pay him one-half of the commissions paid to them by the companies issuing the policies. Candee being unable to place all the Bell insurance he had agreed to carry in his own companies, on his own responsibility, on April 8, 1889, wrote to Iott & Son: "Please place one thousand dollars for James Bell's Estate, as per form herewith. Application and survey inclosed, to date April 9th, one year, at 4½ per cent;" and on April 27, 1889, Candee again wrote to them as follows: "I inclose forms for which please place for Est. James Bell $2,000 as per amounts specified on forms, for one year, at 4½ per cent, to date from April 27, 1889."

The forms inclosed in these letters were printed description of property, "Bell's Mills—James Bell, Ullin, Ill.;" and the two letters thus naming "Estate of James Bell" as the assured, accompanied by forms so describing the property, informed Iott & Son of the death of James Bell and the ownership of the property by his heirs or devisees, whose interests were to be insured under the designation of "Estate of James Bell." Policies were sent by Iott & Son, one on April 9, 1889, for $1,000, and one on May 1, 1889, for $2,000, as requested, in favor of James Bell, and were sent by Candee on May 2d in a letter to plaintiff, addressed in her business name of James Bell, and stating the amount of the premiums due. Adams, the superintendent, received the policies so sent, forwarded check to Candee for the sum due for premiums, put the policies in the safe without examining them, and Candee did not examine them, but sent them, supposing they were written as ordered in said two letters of April 9th and April 27th; Iott & Son rendered an account to Candee, charging him with said premiums, less one-half of commissions to be paid by the companies to Iott & Son for obtaining the insurance for them, which account Candee paid Iott & Son May 20, 1889. On March 31, 1890, Iott & Son advised Candee by letters that said policies would expire April 9th and April 27th, and asking if renewals

of the same were desired, to which Candee at once replied:
" Please renew James Bell, expiring 9th;

do.　expiring 27th;"

inclosing like forms as were inclosed in former letters of
April 9 and 27, 1889, requesting the original insurance for
"Estate of James Bell." In reply Iott & Son sent two poli-
cies on April 5, 1890, to Candee, one of which was the policy
sued on. Neither Iott & Son nor Candee was the gen-
eral agent for this company, but Iott & Son were acting as
regular Chicago local agents of several insurance companies,
and had, prior to the issuance of this policy, placed insurance
in and received from this company at least six of its poli-
cies. The policy in question was applied for by Candee,
without consultation with, or request or knowledge of
plaintiff. He sent the policy to plaintiff by her business
name, was paid the full premium by check, sent the amount,
less his share of commissions, and defendant received the
premium, less commissions. He was not the agent for
plaintiff or for the estate, but simply placed insurance as a
regular insurance agent. The policy was not examined by
Candee, or plaintiff, or by her superintendent, so that the
omission of the words " estate of " before " James Bell " was
not noticed, but reliance was placed upon Iott & Son that
they had done as directed and named " Estate of James
Bell " as the assured. The facts above stated show that
not only Candee, but Iott & Son, were each fully informed
that James Bell was dead, and as to the ownership of the
property desired to be insured, and were directed to name
" Estate of James Bell " as the assured. If they, or either
of them, were agents of defendant company in this insur-
ance transaction, defendant had all the notice and knowl-
edge concerning the same they had, and was bound by their
acts in relation thereto, and this is so, notwithstanding the
clause in the policy, " if any broker or other person than the
assured have procured this policy　*　*　*　he shall be
deemed the agent of insured, and not of the company, in any
transaction relating to the insurance."

We have no doubt that the proof establishes the fact that

Iott & Son were special agents of defendant. They procured the policy, delivered it to the plaintiff, collected the full premium due and paid it over to defendant company, less the commissions allowed them by the latter for their services. They were notified James Bell was dead, that the " Estate of James Bell " was the interest to be insured, and the premium was paid for such insurance.

There was no deceit practiced by plaintiff and it was shown the hazard was not increased after the death of James Bell in any degree. Under the facts and the law, the careless omission by defendant, through its agents, to write " Estate of " before the words " James Bell " in the policy is an omission that does not exonerate defendant from the liability to pay the amount recovered. Lycoming Ins. Co. v. Ward, 90 Ill. 454; Union Ins. Co. v. Chipp, 93 Ill. 96; Newark Ins. Co. v. Sammons, 110 Ill. 166; Mutual Ins. Co. v. Saginaw Barrel Co., 114 Ill. 99; Phœnix Ins. Co. v. Stock, 149 Ill. 319; Same v. Hart, 149 Ill. 513, and cases cited in the opinion, are authorities supporting the views we extend touching the question of special agency, and the liability of the defendant for the acts and omissions of its agent. No good reason is shown for reversing the judgment.

There is also a motion by defendant in error to order the cost of additional abstract to be taxed against plaintiff in error. This motion is sustained and the judgment affirmed, with directions to the clerk to tax, in addition to the other costs against plaintiff in error, the cost of the additional abstract. Affirmed.