## FIREMEN'S FUND INSURANCE CO. *v.* SIMS, trustee.

1. A requirement in a policy of fire-insurance, that the insured shall submit to an examination under oath touching the matters relating to the risk assumed by the company and the destruction of the property insured, is binding and valid; and a refusal to comply with this condition will preclude the insured from recovering upon the policy, where it provides that no suit can be maintained until after a compliance with such condition.

2. Where the insured voluntarily absents himself in such a manner that he can not be found for the purpose of examination under oath, his absence will be taken as equivalent to a refusal, where the company has in due time elected to require such examination and made all reasonable efforts to notify the insured of the requirement. In such a case neither the insured nor any one claiming under or through him can maintain an action on the policy until after the insured has complied with such requirement.

Submitted May 1,— Decided July 19, 1902.

Action on insurance policy. Before Judge Reid. City court of Atlanta. December 12, 1901.

*King & Spalding*, for plaintiff in error. *Gray, Brown & Randolph, Felder & Rountree*, and *Payne & Tye*, contra.

COBB, J. Suit was brought by Sims as receiver in bankruptcy, appointed to take charge of the assets of E. G. Coffman, who had been adjudged a bankrupt, against the Firemen's Fund Insurance Company, upon a policy of fire-insurance which had been issued to Coffman. By an amendment the name of Sims, trustee in bankruptcy, was substituted for that of Sims, receiver, as a party plaintiff. The case was submitted to the trial judge upon an agreed statement of facts, and he rendered a judgment in favor of the plaintiff, to which judgment the insurance company excepted. It appears from the agreed statement of facts, that, immediately after the fire occurred which destroyed the property covered by the policy sued on, Coffman, the insured, gave the company notice of the fire, as required by the terms of the policy. Shortly thereafter Coffman voluntarily left the city of Atlanta, the place of his residence, and since that time his whereabouts have been unknown. A few days after Coffman's departure certain of his creditors filed a petition in the United States court to have him ·adjudicated a bankrupt, which was accordingly done, and at the instance of these creditors Sims, the defendant in error, was appointed receiver in bankruptcy, and directed by the court to make the formal proofs of loss required by the policy sued on and collect the amount due thereon. Proofs of loss were made out in due time by the receiver, and verified by the affidavits of three persons, who made oath that the facts stated in the proofs of loss were true to the best of their knowledge and belief. One of these persons was an agent of Coffman who had been in control of the property destroyed. Daniel W. Rountree, Esq., as "attorney at law of Coffman," also

concurred in the proofs of loss made out by the receiver, but it does not appear that he had any express authority from Coffman to make proofs of loss. When this paper was tendered, the company, without admitting or denying liability under the policy, declined to receive the same as proofs of loss, placing its refusal upon that stipulation in the policy which required the *insured* to make out and verify the proofs of loss. The company took no exception to the contents of the paper furnished by Sims, but stood upon its supposed right to have the insured personally make the proofs. At the time the company objected to the proofs of loss submitted it also demanded that Coffman, the insured, should submit to an examination under oath by the company and should subscribe to such examination when made; the date upon which and the place where such examination was to be held being set forth. This demand was based upon the following stipulation in the policy: "The insured, as often as required, shall exhibit to any person designated by this company all that remains of any property herein described, and submit to examination under oath by any person named by this company, and subscribe the same; and, as often as required, shall produce for examination all books of account, bills, invoices, and other vouchers, or certified copies thereof if originals be lost, at such reasonable place as may be designated by this company or its representative, and shall permit extracts and copies thereof to be made." The policy further provided that no suit could be maintained thereon until after a compliance by the insured with the conditions therein set forth, the one above quoted being of that number.

Three contentions are made by the company: First, that the plaintiff Sims had no authority under the bankrupt act to maintain a suit as receiver in bankruptcy for the benefit of creditors. Second, that proofs of loss must have been furnished by the insured before a recovery could be had on the policy, and that the proofs submitted did not constitute a substantial compliance with the terms of the policy. Third, that no recovery could be had on the policy until the insured had complied with the demand of the company to submit to an examination under oath. Inasmuch as we have reached the conclusion that the contention last referred to was well taken, it is not necessary to pass upon the other two. The authorities seem to hold that an agent for the insured can make

the proofs of loss, when the insured is absent at the time the fire occurred, and the agent is in a position to furnish the information necessary to complete the proofs of loss, or when the insured is in a position where, for any reason, it would be impossible for him to make the proofs and the agent possesses the necessary information. See 13 Am. & Eng. Enc. L. (2d ed.) 332; Lumbermen's Ins. Co. *v.* Bell, 63 Ill. App. 67 (1), s. c. 166 Ill. 400 (1); German Fire Ins. Co. *v.* Grunert, 112 Ill. 68 (3); Sims *v.* Ins. Co., 47 Mo. 54 (1); Oconner *v.* Ins. Co., 31 Wis. 160 (4); Warren *v.* Ins. Co. (Tex.), 35 S. W. 810.   In Walsh *v.* Ins. Co., 54 Vt. 351, it was held that if the insured was absent and his agent could not make the proofs of loss, equity might grant relief.   And it has been held that an attaching creditor might, where the insured was absent, make the proofs by taking the depositions of the insured and the testimony of other witnesses.   See 13 Am. & Eng. Enc. L. (2d ed.) 333.   We have not, however, found any authority which goes to the extent of holding that a creditor can, where the insured fails or refuses to make the proofs of loss, prepare and file such proofs on information received from third persons.   It was argued that as the policy provided that the word "insured" wherever it appeared therein should include the legal representative of the insured, the receiver in bankruptcy might make the proofs, he being comprehended within the term "legal representative."   It would seem, however, that the words "legal representative" as used in the policy refer to an executor or an administrator.   See 18 Am. & Eng. Enc. L. (2d ed.) 813.   These questions, however, we expressly leave open, placing our judgment of reversal upon the conclusions which will be stated below.

The general rule as to the validity of the requirement that the insured shall submit to an examination under oath is thus stated in the American & English Encyclopædia of Law, vol. 13, p. 358: "As the facts with respect to the amount and circumstances of a loss are almost entirely within the sole knowledge of the insured, and the opportunity and temptation to perpetrate a fraud upon the insurer is often great, it is necessary that it have some means of cross-examining, as it were, upon the written statement and proofs of the insured, for the purpose of getting at the exact facts before paying the sum claimed of it.   Such considerations justify the provision, universally to be met with in policies, requiring the insured

as often as demanded to submit to an examination under oath touching all matters material to the adjustment of the loss, and provisions of that character are held to be reasonable and valid." In Gross *v.* Insurance Company, 22 Fed. 74, the insured refused to submit to such an examination, and it was held that he could not recover. See also Bonner *v.* Insurance Company, 13 Wis. 677. In Fleish *v.* Ins. Co., 58 Mo. App. 596, it was held that a stipulation in a policy of insurance of the character now under consideration was valid and binding, even to the extent that a violation thereof works an absolute forfeiture. Of course where it is impossible for the insured to comply with this condition, or where the circumstances are such, through no fault of the insured, that he can not submit to the examination, his failure to do so will not operate to forfeit the policy. See, in this connection, Phillips *v.* Insurance Company, 14 Mo. 220. But the voluntary absence of the assured, concealing his whereabouts, so that the company can not, by the exercise of the utmost diligence, find him, would certainly not avail him as an excuse for failing to comply with the demand of the company to submit to an examination. In this connection Mr. Ostrander says: "When the assured refuses to be examined under oath, he will forfeit all right to recover; and where he absents himself in such a manner that he can not be found for the purpose of an examination under oath, his absence will be regarded as the equivalent to a refusal." Ostr. Fire Ins. § 172, p. 442.

It is insisted, however, that the insured ought not to be allowed, by collusion it may be with the insurance company, to prevent his creditors from subjecting the amount due on the policy to the payment of his debts. The case of Harris *v.* Phœnix Ins. Co., 35 Conn. 310, is very similar to the present case, and contains a complete answer to this suggestion. There a proceeding was brought against the insurance company by persons claiming to be creditors of one who held a policy of insurance in the defendant company, which had become due and payable. The policy in that case contained a stipulation very similar to the one contained in the policy sued on in the present case. The defendant set up that it had made demand on the insured to submit to an examination and had used due diligence to notify him of the requirement, but that it had been unable to find him, and he had neglected to submit to the examination. It was held that under this state of facts the

plaintiffs could not recover. In the opinion Hinman, C. J., says: "Now, as the plaintiffs stand upon the right of the assured, Bass, and are in no better condition than he would be were he now prosecuting his suit for the damages caused by the loss (Dewit *v.* Baldwin, 1 Root, 138), it becomes important to determine whether the stipulation for his personal examination is a condition precedent to his right under the policy. The plaintiffs insist that it is not such a condition in this case, because it does not appear that notice that a personal examination was required has ever been brought home to the assured. If this was so in consequence of the fault of the defendants, there would doubtless be force in the suggestion. But the defendants have not been in fault. Having used due diligence to notify the assured that they required the performance of this stipulation, they clearly ought not to be held to have waived its performance. If the assured has intentionally absented himself so that he can not be notified that performance of the stipulation is required, he should be held to have had notice. And if for any cause, whether by his fault or otherwise, he can not be notified, that may be his misfortune, or the misfortune of those claiming under or through him, but is no reason for treating as inoperative an important stipulation which the defendants saw fit to require, and the assured to give, as a condition which was to be complied with before there could be any obligation to pay for the loss." In the present case the plaintiff represents those who claim under and through Coffman, the insured, and their right to recover must necessarily depend upon whether Coffman could recover had he instituted the action. It does not lie in their mouths to complain that Coffman may by collusion with the insurance company prevent them from getting possession of a fund which they could subject to the payment of their debts if it were paid over to him. They are in no worse position with respect to this matter than if Coffman had not left his home but had failed or refused to comply with this condition in the policy, or with any other a failure to comply with which would have operated as a forfeiture of the policy. We think the stipulation under consideration in this policy is a valid and binding one, that a failure or refusal to comply with its requirements, without any fault on the part of the insurer, will operate as a forfeiture of the policy, and that no recovery can be had thereon either by the insured or any one claiming under or through him. And as

this would be so without regard to whether proofs of loss had been submitted and accepted or not (see Winnesheik Insurance Company *v.* Schueller, 60 Ill. 465), it is wholly unnecessary to determine whether the proofs of loss submitted in the present case were a sufficient compliance with the terms of the policy.

*Judgment reversed. All the Justices concurring, except Lewis, J., absent.*