Jerry T. BROOKINS and Alta A. Brookins, Plaintiff,

v.

STATE FARM FIRE AND CASUALTY COMPANY, Defendant.

Civ. A. No. CV180–66.

United States District Court, S. D. Georgia, Augusta Division.

Jan. 4, 1982.

George W. Fryhofer, Waynesboro, Ga., for plaintiff.

A. Montague Miller, Augusta, Ga., for defendant.

## ORDER

BOWEN, District Judge.

In this diversity action, plaintiffs' recast complaint alleges, *inter alia*, the following: (1) defendant State Farm Fire and Casualty Company [State Farm] issued a fire policy to plaintiffs, insuring their residence against loss by fire; (2) plaintiffs were at all relevant times owners of the insured property, subject to an indebtedness to the Farmers Home Administration [FmHA]; (3) the fire policy was in effect on November 6, 1978, when plaintiffs' residence was destroyed by fire; and (4) plaintiffs have complied with all conditions and terms precedent to recovery under the policy. Plaintiffs seek payment on the policy for the fire loss as well as twenty-five per cent (25%) bad faith damages and attorney's fees.

In its answer, State Farm denied liability, asserted several affirmative defenses and counterclaimed as follows: (1) for sums paid upon assignment of a promissory note and security deed executed by plaintiffs; and (2) for sums paid to plaintiffs in advance expenses immediately after the fire loss. The case is presently before the Court on defendants' motion for summary judgment on plaintiffs' main claim as a whole, or, in the alternative, for summary judgment on the claim for bad faith damages and attorney's fees, and for summary judgment on its counterclaim for amounts due on the assigned promissory note. Upon review of the pleadings, affidavits, exhibits and discovery on file, the following facts emerge as uncontested:

On August 24, 1978, State Farm issued to Jerry T. and Alta A. Brookins a policy of insurance for property coverage. The policy provided maximum coverage of $35,000.00 for the insured dwelling, $17,500.00 for unscheduled personal property, and $7,000.00 for additional living expenses, and had a term of twelve months with an expiration date of August 24, 1979. With the usual qualifications, the policy insured against all direct loss to the insured caused by fire. Pertinent to defendant's motion, the policy was conditioned as follows: (1) all actions on the policy for recovery shall be commenced within *twelve months from the inception* of the loss, (2) within sixty days after the loss, the insured shall render to the insurer a proof of loss; (3) the insured shall submit to examination *under oath* by the insurer; (4) the insured shall furnish a complete inventory of destroyed,

damaged and undamaged property, showing in detail quantities, costs, actual cash value and amount of loss claimed; and (5) the entire policy shall be void upon concealment or fraud on the part of the insured. A copy of the policy form issued to plaintiffs, which contains the above provision, was on file with the Insurance Commissioner of the State of Georgia.

On November 6, 1978, when the subject policy was in full force and effect, plaintiffs' dwelling was destroyed by fire. Together with other items in the residence, plaintiffs' insurance policy was destroyed in the fire. State Farm's local insurance agent was informed of the fire the same date by some unknown third party, and he promptly notified an insurance adjuster for State Farm of the loss. Thereafter, on November 7, 1978, the insurance adjuster went to Waynesboro, Georgia, to investigate the loss, met with defendant's local agent, received an unsigned notice of loss partially completed by the agent (P–2), and was given directions to the site of the fire.

When the insurance adjuster arrived at plaintiffs' property to begin his preliminary investigation, he met with Jerry T. Brookins. At that time, Mr. Brookins signed a "non-waiver agreement" (D–12) which provided in pertinent part: (1) "there is a question to the origin or cause of the loss or occurrence;" (2) "there is a question of whether there has been a loss sustained because of a peril insured against;" and (3) State Farm, in ascertaining the amount of loss and in investigating the cause thereof, shall not waive its rights under the policy, and any rights of any other party to the agreement shall not be waived. Items number one and two were handwritten by the insurance adjuster; item three was pre-printed language on the non-waiver form. In addition to procuring execution of the non-waiver agreement, the insurance adjuster gave Mr. Brookins a check for $1,500 (apparently the endorsed draft is in the possession of the district attorney's office) (D–10), left some personal property inventory forms with him and instructed him on procedures for completing the forms. Mr. Brookins was not asked to sign the notice of loss form since he had not entered any information on the form.

Following this meeting between the insurance adjuster and Mr. Brookins, it appears that in the week subsequent to the fire, Mr. Brookins telephonically communicated with the local agent; however, they never met in person, nor did Mr. Brookins sign a formal claim. On November 21, 1978, however, the insurance adjuster met with Mrs. Brookins, and a brief discussion ensued concerning the personal property inventory and other matters; no documents were signed. The following day, both Mr. and Mrs. Brookins met with the insurance adjuster, and he took statements from them, which were recorded on tape and subsequently transcribed. Mrs. Brookins also executed the non-waiver agreement previously signed by Mr. Brookins. Immediately prior to this second meeting, the insurance adjuster had received information that the origin of the fire might be arson.

Two days following this second meeting, on November 24, 1978, an employee of the Burke County, Georgia Sheriff's Office obtained a warrant for the arrest of Jerry T. Brookins on a charge of "[k]nowingly conspir[ing] . . . to destroy [his residence] by fire for the purpose of collecting the insurance thereon." Approximately one year later, a Burke County grand jury indicted Mr. Brookins for arson in the first degree. Following a two-day trial in Burke County Superior Court, the jury, by verdict returned December 6, 1979, acquitted Mr. Brookins of the offense charged.

In the time period between the issuance of the warrant for Mr. Brookins' arrest and his eventual acquittal some thirteen months later, numerous correspondence occurred between the parties and between the parties' counsel. By letter dated November 28, 1978, restricted delivery (D–7), State Farm informed the Brookins that the fire loss was under investigation, enclosed a proof of loss form for completion and quoted in full the policy language pertaining to the proof of loss requirement. On January 2, 1979, plaintiffs executed the proof of loss form

(D–4), claiming a total loss of $54,500.00, and returned the form, with no accompanying documents, to State Farm by letter of the same date (D–5). Thereafter, by letter dated January 12, 1978, (D–8) the claim superintendent for State Farm, as required by law, notified the Assistant State Fire Marshall for the State of Georgia that, according to the investigations of State Farm and the Burke County Sheriff's Office, the subject fire was deliberately set.

On February 14, 1979, State Farm wrote a letter to the Brookins, certified mail—return receipt requested (D–9), stating that the proof of loss filed by the Brookins was insufficient for the following reasons: (1) it was not supported by an inventory of the damaged or destroyed personal property claimed; (2) it was not supported by any estimate to support the amount claimed for the dwelling item; and (3) it did not state the origin of the loss. In the months following this letter, there ensued a lengthy exchange of correspondence between counsel for both parties regarding the examination of Mr. and Mrs. Brookins under oath (D–1). Counsel for State Farm first requested such an examination on January 23, 1979, and, receiving no reply, again made the request on February 15, 1979. Responding to the second letter, plaintiffs' counsel requested an extension of time to "set up" the examinations and stated that he "certainly intended to cooperate." Almost three months later, on May 10, 1979, defendant's counsel again wrote counsel for plaintiffs stating that he had not heard from him as yet and was still anxious to undertake the examinations. Once again, counsel for State Farm repeated this request on August 7, 1979. Finally, on December 18, 1979, two weeks after the jury acquittal of Jerry T. Brookins, plaintiffs' counsel responded that Mr. and Mrs. Brookins would be available for examination under oath. On January 7, 1980, defendant's counsel informed counsel for plaintiffs that because of plaintiffs' failure to comply with the terms and provisions of the insurance policy and due to the nature of the origin of the loss, State Farm no longer desired examinations under oath and denied any liability.

Prior to the last two of the above-described correspondence, State Farm, by check dated November 12, 1979, paid to FmHA the sum of $16,335.14 and was thereafter assigned by FmHA a promissory note and deed to secure debt executed by plaintiffs. On January 8, 1980, counsel for plaintiffs made demand upon State Farm for the purported amount of loss plus twenty-five per cent (25%) damages for bad faith. Subsequently, on April 8, 1980, plaintiffs instituted the present action.

In its motion, State Farm seeks summary judgment on plaintiffs' claim as a whole on the following bases: (1) plaintiffs failed to submit an appropriate proof of loss and an inventory as required under the terms and conditions of the policy; (2) plaintiffs failed to submit to an examination under oath; and (3) plaintiffs did not file their action within the time provided for in the policy.

*Proof of Loss*

█ The subject insurance policy contained the uniform mandatory form of fire insurance policies published as an addendum to section 56–3201 of the Georgia Code. Lines 97 through 113 of the standard form requires that, within sixty days after the loss, the insured shall render to the insurer a proof of loss. Here, State Farm, by letter dated November 28, 1978, furnished plaintiffs with a proof of loss form. This form was subsequently signed and sworn to by plaintiffs and returned to State Farm by letter dated January 2, 1979. Defendant wrote back that the submitted proof of loss was deficient, specifically because: (1) it was not supported by an inventory; (2) it was not supported by an estimate; and (3) it did not state the origin of the loss. The issue presented by defendant's motion for summary judgment is whether plaintiffs' proof of loss, although timely filed, is so deficient as to constitute a bar to the present action.

State Farm's argument is grounded on the general principle that "[a]bsent a waiver, the furnishing of the proof of loss as required by the policy is a condition prece-

dent to the accrual of liability on the part of the [insurer] and to the institution of suit by the insured." *Buffalo Ins. Co. v. Star Photo Co.*, 120 Ga.App. 697, 708, 172 S.E.2d 159 (1969). Counterbalancing this principle is the rule of construction that the law does not favor forfeiture and that an insurance policy must be construed most strongly against the insurer. *Harp v. Fireman's Fund Insurance Co.*, 130 Ga. 726, 728, 61 S.E. 704 (1908). Thus, Georgia appellate courts have determined that "a mere failure to furnish proper proofs of loss *within the 60-day period* will not work a forfeiture of the policy unless there is an *express stipulation* to that effect." *Progressive Mutual Insurance Co. v. Burrell Motors, Inc.*, 112 Ga.App. 88, 88, 143 S.E.2d 757 (1965). *See, e.g., Farm Bureau Mutual Insurance Co. v. Bennett*, 114 Ga.App. 623, 152 S.E.2d 609 (1966); *Theo v. National Union Fire Insurance Co.*, 99 Ga.App. 342, 109 S.E.2d 53 (1959).

Recently, the Georgia Court of Appeals considered the above-cited language from the standard fire insurance form pertaining to proof of loss, as well as the following standard language, contained in the present policy, relating to suit on the policy: "No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless all the requirements of this policy shall have been complied with." *See* Ga.Code Ann. § 56–3201 addendum lines 157–160. In *Parris v. Great Central Insurance Co.*, 148 Ga.App. 277, 278, 251 S.E.2d 109 (1978), it was established that plaintiff had not timely filed a proof of loss but had submitted one at least sixty days prior to the contract time limitation period for instituting suit. Holding that an action on the fire policy was not barred, Judge Shulman concluded:

> The insurance policy contains no express stipulation to the effect that failure to submit a proof of loss within 60 days of the loss will result in forfeiture. Nor was there an express stipulation in the policy that furnishing a proof of loss within the time specified shall be a condition precedent to the bringing of an action against the insurer. Therefore,

maintenance of the suit on the policy will not be barred solely by reason of the failure to timely submit proof of loss within 60 days after the loss so long as proofs of loss were furnished at least 60 days prior to the expiration of the contractual limitation period for filing.

*Id.* at 278, 251 S.E.2d 109. *Cf. Atlanta International Properties, Inc. v. Georgia Underwriting Association*, 149 Ga.App. 701, 702, 256 S.E.2d 472 (1979) (holding failure to comply with notice of loss provision a bar to action on the policy).

In construing *Parris*, one commentator has stated that:

> the [*Parris*] court felt that, in the absence of a specific stipulation that failure to submit proof of loss within sixty days would result in forfeiture of the right to sue, such harsh construction was not compelled. *Only substantial compliance* was required and this was satisfied by a showing that a proof of loss was at least sixty days prior to the expiration of the one year contractual limitation period for filing suit.

Pock, *Insurance*, 31 Mercer L.Rev. 117, 137–38 (1979) (emphasis added). Hence, the determinative inquiry in the present case is whether plaintiffs substantially complied with the proof of loss requirements prescribed in the policy.

A review of the form supplied by State Farm and completed by plaintiffs reveals that the varied questions on the form fairly track the proof of loss requirements specified in the standard form, lines 100–113. Plaintiffs filled in all the pertinent blanks and swore to and signed the form before a duly authorized notary. Although State Farm rejected the proof of loss form on grounds that it was not supported by an inventory or an estimate, such supporting documentation to a proof of loss is not required by the express language of lines 97–113 of the standard form. Given these facts, as well as plaintiffs' timely submission of the proof of loss by certified mail on January 2, 1979, the Court finds that plaintiffs' action is not barred for failure to file

a proof of loss. Accordingly, defendant's motion for summary judgment on this basis is DENIED.

*Submission to Examination Under Oath*

■ The subject policy contained the following standard form language:

The insured, as often as may be reasonably required, shall exhibit to any person designated by this Company, all that remains of any property herein described, *and submit to examinations under oath by any person named by this Company, and subscribe the same*; and, as often as may be reasonably required, shall produce for examination all books of accounts, bills, invoices and other vouchers, or certified copies thereof if originals be lost, at such reasonable time and place as may be designated by this Company or its representative, and shall permit extracts and copies thereof to be made.

Ga.Code Ann. § 56–3201 addendum lines 113–122. This clause, coupled with the standard provision that "[n]o . . . action on this policy . . . shall be sustainable . . . unless all the requirements of this policy shall have been complied with," *id.* addendum lines 157–160, provides that submission to examination under oath by the insured is a condition precedent to recovery on the policy. *See Firemen's Fund Ins. Co. v. Sims*, 115 Ga. 939, 42 S.E. 269 (1901); *Nichols v. Pearl Assurance Co. Ltd.*, 71 Ga.App. 378, 31 S.E.2d 127 (1944). *Cf. Townley v. Patterson*, 139 Ga.App. 249, 249, 228 S.E.2d 164 (1976) (provision in policy that no suit on policy is sustainable unless all the requirements of the policy have been complied with is a condition precedent to recovery and is binding against the insured).

In this case, counsel for defendant, on four separate occasions, requested that plaintiffs submit to examination under oath. Plaintiffs, through their attorney, never refused to submit to examination but instead requested time to arrange matters. Ultimately, more than twelve months after the inception of the loss on November 6, 1978, plaintiffs agreed to examination under oath by letter dated December 18, 1979. The issue presented is whether plaintiffs' failure to submit to examination under oath, within the twelve-month period for an action of the policy, constitutes a bar to the present suit.

In *Saft America, Inc. v. Insurance Co.*, 155 Ga.App. 500, 271 S.E.2d 641 (1980), the Georgia Court of Appeals recently considered the effect of an insured corporation's failure to submit to an examination under oath in the context of a claim on a theft insurance policy. There, the policy at issue contained the following provision:

Upon the Company's request the Insured shall submit to examination by the Company, subscribe the same, under oath, if required, and produce for the Company's examination all pertinent records, *all at such reasonable times and places as the Company shall designate*, and shall cooperate with the Company in all matters pertaining to loss or claims with respect thereto.

*Id.* at 500, 271 S.E.2d 641 (emphasis in original). The insurer made demand that the insured corporation submit to examination under oath; however, the demand failed to show designation of a time and place. *Id.* at 501, 271 S.E.2d 641. By response letter, counsel for the insured did not refuse examination, but instead forwarded the demand letter to the president of the insured corporation; yet, no examination occurred and the corporation ultimately filed suit.

In reversing a grant of summary judgment in favor of the insurer on the basis of the insured's failure to submit to examination under oath, the Georgia Court of Appeals noted that the insurance policy clearly required the insured to designate a time and place for the examination. *Id.* at 502, 271 S.E.2d 641. Since the insurer failed to provide such a designation, it could not now rely on its own policy provision as a defense when it had failed to meet the requirement of giving specific notice. The court concluded by quoting with approval as follows:

"Where no person had been designated by the insurer to make the examination, the insured was held not to have breached a requirement to attend an examination concerning a loss. And a provision re-

quiring attendance is available as a defense only if the insurer fixes a reasonable time and place therefor. *In fact, the time and place of taking, and person to take the examination, must all be set forth by the insurer in its demand.*" *Id.* at 502, 271 S.E.2d 641 (quoting 5A Appleman on Insurance Law and Practice, 557, § 3551).

In this case, the demand letters by State Farm failed to specify the person to take the examination and failed to designate the time and place of the examination. While the language in the subject policy pertaining to examination under oath is different from the provision at issue in *Saft*, the *Saft* court bottomed its holding in large part on *Firemen's Fund Ins. Co., supra,* in which the Georgia Supreme Court evaluated language identical to that in the State Farm policy. As construed by *Saft,* the *Firemen's Fund* court held that the plaintiff insured's failure to submit to examination under oath constituted a bar to suit on the policy because, under the facts there presented:

> "At the time the company objected to the proofs of loss submitted it also demanded that . . . the insured[ ] should subscribe to such examination when made; *the date upon which and the place where such examination was to be held being set forth.*"

*Id.* at 501, 271 S.E.2d 641 (quoting *Firemen's Fund Ins. Co.,* 115 Ga. at 941, 42 S.E. 269 and adding emphasis). See also *id.* 155 Ga.App. at 502, 271 S.E.2d 641 ("This interpretation [*i.e.,* the *Saft* court's holding] is supported by the quoted portions of *Firemen's Fund.*"). Thus, in the view of the *Saft* court, the dispositive fact in *Firemen's Fund* was the insurer's designation of a time and place for taking the insured's examination.

Here, neither State Farm's letter rejecting plaintiffs' proof of loss nor counsel's demand letters designate a person to take plaintiffs' examination or the time and place of the examination. Accordingly, on the basis of *Saft,* plaintiffs' failure to submit to examination under oath does not constitute a bar to suit on the policy.

*Time Limitation for Bringing Suit*

█ As mentioned earlier, the fire insurance policy at issue contains the standard limitation as follows: "No suit . . . on this policy . . . shall be sustainable . . . unless commenced within twelve months next after the inception of the loss." The Georgia appellate courts have uniformly found such a limitation provision to be valid and enforceable. See *Gravely v. Southern Trust Insurance Co.,* 151 Ga.App. 93, 94, 258 S.E.2d 753 (1979); *Herring v. Middle Georgia Mutual Insurance Co.,* 149 Ga.App. 585, 586, 254 S.E.2d 904 (1979); *Townley v. Patterson,* 139 Ga.App. 249, 249, 228 S.E.2d 164 (1976); *Pennsylvania Millers Mutual Insurance Co. v. Thomas Milling Co., Inc.,* 137 Ga.App. 430, 431, 224 S.E.2d 55 (1976). *Cf. Queen Tufting Co. v. Fireman's Fund Insurance Co.,* 239 Ga. 843, 844, 239 S.E.2d 27 (1977) (holding section 3–705 six-year limitation applied where policy provided for twelve-month period "unless a longer period of time is provided by applicable statute"). Yet, although valid, where application of such a limitations period would work a forfeiture of the policy benefit, " 'the court will strictly construe the provision against the insurance company and small circumstances will be sufficient to show a waiver by the company'." *Decatur Federal v. York Ins. Co.,* 147 Ga.App. 797, 798, 250 S.E.2d 524 (1978) (quoting *New York Underwriters Ins. Co. v. Noles,* 101 Ga.App. 922, 925, 115 S.E.2d 474 (1960)).

In accordance with this principle pronounced by the *Decatur* court, *supra,* Georgia appellate courts have found that certain conduct by the insurer may constitute a waiver of limitations period or may estop the insurer from asserting the twelve-month limitation as a defense. See *Zappa v. Allstate Insurance Co.,* 118 Ga.App. 235, 235, 162 S.E.2d 911 (1968); *Aiken v. Northwestern Mutual Insurance Co.,* 106 Ga.App. 220, 221, 126 S.E.2d 630 (1962); *General Insurance Co. v. Lee Chocolate Co.,* 97 Ga.App. 588, 588, 103 S.E.2d 632 (1958). Thus, a waiver has been implied when the "investigations, negotiations, or assurances by the insurance company up to and past the peri-

od of limitation ... led the insured to believe the limitation would not apply." *Modern Carpet Industries, Inc. v. Factory Insurance Association*, 125 Ga.App. 150, 151, 186 S.E.2d 586 (1971). *See, e.g., Reserve Insurance Co. v. Smith*, 145 Ga.App. 850, 245 S.E.2d 66 (1978) (evidence authorized submission of implied waiver question to the jury); *Nee v. State Farm Fire & Casualty Co.*, 142 Ga.App. 744, 236 S.E.2d 880 (1977); *Georgia Farm Bureau Mutual Insurance Co. v. Mikell*, 126 Ga.App. 640, 642, 191 S.E.2d 557 (1972) ("waiver may result where the company leads the insured by its actions to rely on its promise to pay, express or implied"); *Laughinghouse v. First Georgia Insurance Co.*, 123 Ga.App. 189, 191, 179 S.E.2d 675 (1971) (evidence of statement made by insurer that everything was in line, was being processed, and only little time was necessary, was, if believed by the jury, sufficient to constitute a waiver of limitations period); *Ku Klux Klan v. Fidelity and Deposit Co.*, 47 Ga.App. 12, 18, 169 S.E. 514 (1933); *Stanley v. Sterling Mutual Life Insurance Co.*, 12 Ga.App. 475, 476, 77 S.E. 664 (1913). *See generally Forrester v. Aetna Casualty and Surety Co.*, 478 F.Supp. 42 (N.D.Ga.1979).

In this case plaintiffs executed a nonwaiver agreement which provided in part:

[T]here is a question as to whether or not the Company is obligated under the policy. The undersigned voluntarily consent and agree that any action taken by State Farm ... in ascertaining the amount of [the subject] loss and damage ... and in investigating the cause thereof, shall not waive or invalidate any of the terms or provisions of the policies or insurance of any rights of the Company to deny liability for the loss.

A review of the discovery and exhibits on file shows "the case is lacking in evidence of any affirmative promise, statement or other act of the defendant ... to lead [plaintiffs] into believing that the defendant intended to enlarge ... the limitation period." *Johnson v. Georgia Farm Bureau Mutual Insurance Co.*, 141 Ga.App. 859, 861, 234 S.E.2d 693 (1977). Indeed, State Farm, as early as February 14, 1979, three months

after the loss, in its letter rejecting plaintiffs' proof of loss, stated that "[t]he investigation of this loss continues, and we neither accept nor deny this claim at this time." Thereafter, no substantive negotiations between the parties occurred. *See Aiken v. Northwestern Mutual Insurance Co.*, 106 Ga.App. at 223, 126 S.E.2d 630; *General Insurance Co. v. Lee Chocolate Co.*, 97 Ga.App. at 589–90, 103 S.E.2d 632. Accordingly, the Court finds that no evidence exists which would support a finding of waiver on the part of State Farm.

With respect to estoppel, the Georgia appellate courts have held that an insurer's willful refusal to provide the insured with a copy of his insurance policy may estop the insurer from relying upon a provision in the policy. *See Lanier v. Coastal States Life Insurance Co.*, 106 Ga.App. 802, 128 S.E.2d 550 (1962); *Union Fire Insurance Co. v. Stone*, 41 Ga.App. 49, 152 S.E. 146 (1930). Before the insurer's conduct will work an estoppel, however, it must engage in some "affirmative act of concealment, which gives evidence that the insurer is not fulfilling its obligation to the insured to the utmost fair dealing." *Lanier v. Coastal States Life Insurance Co.*, 106 Ga.App. at 804, 128 S.E.2d 550. Such an affirmative act of concealment was found where the insured delivered his policy to the insurer and the insurer wrongfully refused to redeliver the policy, *see Stone, supra*, or where the insurer never delivered the policy to the insured in the first place and subsequently refused two written requests for copies of the policy. *See Lanier, supra*.

Here, the insurance policy was delivered to plaintiffs, and they had ample time to read it from date of the policy's inception, on August 8, 1978, until its destruction in the fire on November 6, 1978. As summarized by Judge Eberhardt in a dissenting opinion:

It is the duty of a policyholder to read his policy and familiarize himself with its provisions, conditions, etc. *Security Life Ins. etc. Co. [v. Gober]*, 50 Ga. 404(2); *Massey v. Cotton States Life Ins. Co.*, 70 Ga. 794.... *Thomson v. Southern Mut.*

**394**

Ins. Co., 90 Ga. 78 [15 S.E. 652]. "It is presumed that the insured knew of the policy provisions." *Hatfield v. Colonial Life etc. Ins. Co.*, 102 Ga.App. 630, 632 [116 S.E.2d 900]. "Having the policy in its possession prior to the fire plaintiff was charged with the knowledge of the terms and conditions of the policy ..." *S. & A. Corp. v. Berger & Co.*, 111 Ga. App. 39, 40 [140 S.E.2d 509] .... Failure of an insured to acquaint himself with the policy provisions does not excuse his compliance with the requirements of the policy. *Equitable Life Assur. Soc. v. Adams*, 56 Ga.App. 5(2) [192 S.E. 90]. *Modestino v. Allstate Insurance Co.*, 125 Ga.App. 665, 668–69, 188 S.E.2d 830 (1972) (Eberhardt, J., dissenting). Furthermore, the terms and conditions in the subject policy were on file with the Insurance Commissioner of the State of Georgia, and, of course, the standard form is published in the Georgia Code. Additionally, while there is deposition testimony by Mrs. Brookins that she requested a copy of the insurance policy, neither plaintiffs nor plaintiffs' counsel ever made written request for a copy of the policy. *Cf. Lanier, supra.*

On the basis of the record before it, the Court can find no genuine issue of fact which would support a determination that State Farm affirmatively concealed the subject policy from plaintiffs. Thus, State Farm is not estopped from asserting the twelve-month limitations period in defense of plaintiffs' action.

Accordingly, since the twelve-month period for suit on the policy is valid and enforceable, and in the absence of a genuine issue of waiver of estoppel, the Court finds that the present action is barred as untimely. Summary judgment is therefore GRANTED in favor of defendant. Further ordered that summary judgment is GRANTED in favor of defendant on its counterclaim for plaintiffs' indebtedness on the assigned promissory note; provided, however, that the Court may reconsider this order upon further response by plaintiffs to this aspect of defendant's motion within thirty days. Each party shall bear their own costs.