THOMSON *et al. v.* SOUTHERN MUTUAL INSURANCE CO.

1. A policy of insurance upon a dwelling-house, with a vacancy clause in it of thirty days, having been renewed from year to year for several years under a general request made by the insured of the agent of the insurance company, and each renewal having been by the mere delivery of a receipt for the premium without the issuance of a new policy, and the agent, acting on the same general request, having in the last transaction discontinued this mode of renewal, the company in the meantime having adopted a new form of policy with a vacancy clause limited to ten days, it was not a fraud upon the insured against which equity will relieve, that the agent, without giving any notice to the insured, delivered to him a policy in the new form, this policy having been thereafter retained by the insured for four months without reading it, and he never having read it until after the destruction of the premises by fire at or about the expiration of that period. The discontinuance of the ordinary mode of renewal and the issuance of a new policy ought to have suggested to the insured either the reading of the policy or the making of some inquiry of the agent as to the terms and conditions which it contained. The means of preventing any false inference from the mere silence of the agent were in the hands of the insured, and he ought to have used them. By reasonable diligence he might have had knowledge of the truth. Code, §3126.
2. The evidence left no doubt on the question that the premises had been vacant more than ten days when the fire occurred, and the court did not err in granting a nonsuit.          *Judgment affirmed.*

August 1, 1892.

Insurance.     Fraud.     Before Judge MILLER.     Bibb superior court.     November term, 1891.

The action was by Thomson and Mrs. Whitehead against the insurance company, upon a policy of insurance upon a building alleged to have been occupied by tenants in Bibb county. The policy was issued December 29, 1887, and the fire alleged to have occurred on April 22, 1888. The policy contained a clause of forfeiture in case the building should be left vacant or unoccupied for more than ten days, without notice to and consent in writing of the insurance company. The declaration alleged, among other things, that this condition

was fraudulently and surreptitiously imposed on petitioners without any notice to them; that in December, 1881, they obtained a policy of insurance on the building from defendant, and in that policy the term of vacancy, mentioned as one which would forfeit the policy, was thirty days; that on this policy petitioners paid the premiums until December, 1887, and on that day the company tendered them the policy sued on, which it, by its agent, represented to be the same as the previous policy, and by its representation and failure to call attention to any change, petitioners, confiding in the good- faith of the company and its agent, were misled and prevented from making any examination of the policy with a view of observing any difference. They alleged that the ten days clause was not a part of the contract, by reason of fraud, and prayed that the policy be reformed so as to express the true contract, to wit, thirty days in lieu of ten in the vacancy clause. A nonsuit was granted, the judge below remarking that neither the plaintiff Whitehead, nor Conner, who was agent of the company at the time in question, seemed to show anything transpiring, not a word, when the policy was delivered, one just handing the policy and the other taking it. To the granting of the nonsuit plaintiffs excepted.

Upon the trial Whitehead testified : Thomson is my brother-in-law, and Mrs. Whitehead my wife. I represent them. Made contracts with defendant, one in 1881, and in 1887, with Conner representing defendant The house was burned in March or April, 1888, and was worth about $600. It was occupied by negro tenants. The fire occurred from no fault or cause on my part. Do not remember when I visited the place last before the fire. I had not collected any rent for several months. At the time the second policy was tendered me by the agent, nothing was said as to any change in the policy;

if it had, I would not have continued the insurance. I did not know of the change in the policy until after I made application for the loss ; my attention had not been called to it before that. The agent has instructions to renew everything without coming to me on each occasion. I knew there was a vacancy clause in the policy. I have a good many policies with defendant. The policy of 1887 was handed me at the expiration of six years as a renewal of the contract, and I accepted it as such ; nothing was said as to changes in the policy. The policy of 1887 was brought to me when it was issued, or soon afterwards. It was done through Conner's agency. I have no specific recollection about the occurrence and facts ; had a great many conversations with Conner, but do not remember anything about the circumstances; do not remember there was any conversation between me and whoever brought the policy, or whether the policy was brought before or after the expiration of the old policy. Conner had instructions to renew all policies ; to renew the insurance as it expired. There was nothing said about the terms or conditions of the policy, or whether the terms were the same. I never read the policy of 1887 when it was brought me, except the amount of it; only read the amount of the policy of 1881 ; do not think I read the policy of 1881 through until after the fire. When I made the original contract for insurance with defendant there was nothing said as to how long the property should remain vacant. I knew what the general terms were, because I had other property insured with that company, and presumed they were the same, except the rates. When the second policy was brought nothing was said about the delivery of it, and I had no conversation or understanding with the agent of the company about the condition of the policy I had on this particular property. I knew the conditions of the policy of 1881. The policy of 1887 was

accepted as a renewal of the policy which had been running. Not one word was said to me about the change of the conditions in it. I do not remember what Conner said to me at that time, it has been so long ago. Randall Thweat was my last tenant in this property. The last time I was there I saw his sister, who told me he was not at home. I think it was over a month before the fire that I was at the house, but I met his sister on the road. Randall was not in the house the last time I was there, but his family was. It is not true, of my own knowledge, that the last time I was at the house Randall had moved his family and furniture away.

Connor testified : Boardman issued the policy of 1881, and I was his clerk. I was the agent in 1887. As a matter of general information I know the conditions of the policy of 1881. I know the conditions of the policy of 1887. I had no other policy to give Whitehead. When I handed him the policy of 1887, I did not call his attention to that vacancy clause. I knew the vacancy clause of 1881, and knew the change had been made from thirty days to ten in the vacancy clause. I was the company's agent, not Whitehead's. I had no instructions from Whitehead about the renewals of his policies, but he asked me generally not to let any of his policies expire without notification. I cannot recollect any special conversation about it. If there was any conversation as to the time the property could be left vacant, it was after the fire; there was none before. I think I can state positively there was no conversation about the house that burned at all; it just went along. I had general instructions from Whitehead, and whenever I wanted my money I would go to him and collect it, or send. I collected the policy of 1887, for I went to him myself and delivered that policy. The company ran out of the old form and was obliged to reorganize the policy; and the board of

directors ordered this policy in lieu of the other one, and the vacancy clause was made ten days.

The policy of 1881, and the clause in question of the policy of 1887, were introduced. Also, a blank form of receipt which Whitehead testified was in the form receipts were given him, which receipt contained no statement material to this case. Also proofs of loss, objected to as defective, on May 25, 1888, and a positive refusal by defendant to pay, on the ground that the building had been vacant for a longer time than that stipulated in the policy, and was so vacant at the time of the fire, dated June 15, 1888. There was further evidence to the effect that the house had been vacant some two or three weeks before the fire. One witness testified that he saw people in the house before the fire, but did not know whether they lived there or not; saw them there two or three days before the fire. In an affidavit made by witness in this case, he may have said that the last time he passed the house was about two weeks before the fire. It was somewhere along there. Witness had no accurate recollection of how long it was before the fire; it might have been longer than two weeks. All he knows is, he saw two or three colored people there when he passed, before the fire; the doors and windows were open; does not know whether there was any furniture there or not, did not see any; cannot say whether they were tenants of the house or people that happened in there. Cannot say positively it was inside of two weeks that he saw people in the house; expects it was within a month; would not swear positively about it being inside of two weeks.

HILL, HARRIS & BIRCH and M. R. FREEMAN, for plaintiffs.

LANIER, ANDERSON & ANDERSON, for defendant.