### HART *v.* WALDO *et al.*

SIMMONS, C. J. 1. A representation which is true and not calculated to deceive can not be the basis of an action for deceit.

2. It follows that where, in a suit for deceit against an insurance company and one of its agents, the petition alleges that the deceit consisted in the agent's stating to plaintiff, contrary to the requirements of her policy, that what she had done was all that was necessary with regard to furnishing proofs of

loss, and further alleges that the agent had full authority to make this statement and to waive the requirements of the policy as to proofs of loss, a demurrer to the petition should be sustained, for the agent's statement, acted on by the plaintiff, operated to release her from the obligation to make proofs of loss, and was, therefore, true.

CANDLER, J., concurring. 1. The holder of an insurance policy is chargeable with knowledge of its conditions; and this is none the less true where he voluntarily parts with actual possession of the policy by pledging it as security for a loan.

2. Misrepresentations as to the legal effect of a contract and the obligations imposed thereby, where there is no fiduciary relation between the parties and the circumstances are not such as to give the plaintiff a legal right to rely without further question upon the statements of the defendant, will not support an action of deceit.

Argued January 15, — Decided April 8, 1903.

Action for deceit.    Before Judge Reid.    City court of Atlanta. March 3, 1902.

Mrs. Hart sued Waldo and the Phenix Insurance Company, a New York corporation, in an action for deceit.    Her petition stated substantially the following case:    She is the owner of, and is entitled to the possession of, a policy of fire-insurance for $1,200, issued by the defendant insurance company, on her house in the city of Atlanta. On December 10, 1897, while the policy was in force, her house was destroyed by fire.    The defendant Waldo was at that time, and still is, the local agent of the insurance company, and had charge of all matters arising out of the policy, including proofs of loss, appraisals, and adjustments.    A few days after the fire, she notified Waldo of the destruction of her house, and he informed her that the amount of the loss would have to be determined by arbitration.    Accordingly arbitrators were appointed, who made a report fixing the amount of the loss at $870.04.    After the return of the arbitrators, the plaintiff " asked said Waldo if it would not be necessary for her to make oath to the paper, or whatever the return of the arbitrators was," and he " answered that it would not be necessary for her to make oath to said paper; that the report of the arbitrators was all that was necessary."    In further conversation with him, she asked him specifically " if she had anything more to do in regard to proof, and if she had done all that was required of her, and said Waldo answered that she had given all the proof that was necessary."    She then requested him to pay her the amount found by the arbitrators, to which he replied, that, as her policy was a premium policy, he would hold up

payment for sixty days, and at the expiration of that time the company would pay her $870.04. On the sixtieth day after the return of the arbitrators, she went to Waldo's office, which was also the office of the insurance company, expecting to receive the payment which had been promised her; but she was informed that Waldo was in Florida, and was referred to Stockdell, "the general agent of said Phenix Insurance Company." She went to see Stockdell, and was informed that he had nothing to do with the matter, but that it was entirely in the hands of Waldo, whom she must see. Waldo was gone from the city for some time, and she did not succeed in seeing him until about thirty days after the time when he had informed her that the money would be paid to her, which was more than ninety days after the fire. He then told her "that said Phenix Insurance Company neither admitted nor denied liability under said policy, but would stand upon their legal rights." The defendants have both ever since refused to pay the plaintiff the sum of $870.04, or any part thereof, or to adjust or settle with her the amount of the loss or the amount to which she is entitled under her policy. The policy contained a stipulation, in substance, that: " If fire occur, the insured, . . within sixty days after such fire, unless such time is extended in writing by this company, shall render a statement to this company, signed and sworn to by said insured, stating the knowledge and belief of the insured as to the time and origin of the fire; the interest of the insured and of all others in the property, the cash value of each item thereof, and the amount of loss thereon; all incumbrances thereon; all other insurance, whether valid or not, covering any of said property, and a copy of all the descriptions and schedules in all policies; any change in the title, use, occupation, location, possession, or exposures of said property since the issuing of this policy; by whom and for what purpose any building herein described and the several parts thereof were occupied at the time of the fire," etc. There was also a stipulation in the policy to the effect that the company should not be held to have waived any condition or provision of the policy, or any forfeiture, by any requirement, act, or proceeding on its part relating to the appraisal or to any examination therein provided for.

All the conditions and stipulations of the policy were well known to both the defendants, before and since the fire; but they "were not well known to petitioner, for the reason that at the time of said

fire said policy of insurance was in the hands of the Southern Messenger Service, to which it had been transferred as additional security for a loan of money, made before said fire, with the consent of said Phenix Insurance Company, written and attached to said policy; and petitioner was therefore not in actual possession of said policy at the time of said fire." Immediately after the fire, the insurance company or its agent, Waldo, went to the Southern Messenger Service, paid off the loan, and took up the note and security deed, "and took possession of said policy of insurance on said house and retained the same, and has ever since kept the same, against your petitioner's wishes and without her consent." Since then she has paid off the loan and taken up the note and deed, but the insurance company, through Slaton, its attorney, refused to return the policy to her, and still holds it. After repeated efforts to collect the amount fixed by the arbitrators as the loss occasioned by the fire, she brought suit against the insurance company upon the policy, setting out in her declaration "the furnishing of said appraisement, and the further fact that such arbitration or appraisal amounted to waiver on the part of said company of further proofs of loss in writing, as required by the strict terms and conditions of said policy." The petition in that case was dismissed on demurrer, and the judgment of dismissal was affirmed by the Supreme Court of Georgia. (110 *Ga.* 300.) But for the representations of Waldo, she would have complied with the conditions of the policy; and if thereafter the insurance company had failed to pay her the sum of $870.04, she could have compelled its payment in the courts. The misrepresentations made by Waldo were made wilfully and knowingly, and for the purpose of inducing her not to make proofs of loss as required by the policy, and in acting upon the misrepresentations she acted to her injury, in that she lost her right to collect the amount of the loss fixed by the arbitrators. Waldo "was under a duty to petitioner, knowing as he did that she had no legal adviser, and that she was a woman, in bad health, and not accustomed to such business, and knowing further that petitioner trusted him and accepted all his statements as the truth, because she had obtained said policy from him, and knew that he was familiar with the conditions of the same, and considered him a perfect gentleman and an honest man, to tell her, when she stated to him that she had complied with all the conditions of the policy and had done all that

was required of her and had made all the proof about the house, that she had other proof to make; and the failure of . . Waldo' to answer petitioner, when she made this statement, would in itself give petitioner a right to recover against him." The insurance company is equally responsible to petitioner, in that it was a party to the fraud and misrepresentations of Waldo, "and for the further reason that . . Waldo was the agent of said . . insurance company, having the right to waive and extend the provisions of said policy requiring written proof of loss, and had the right to pay petitioner at once upon the return of said appraisal [of] the amount of said loss, and could have done so; and in all the transactions before stated he acted within the scope of his authority as such agent;" and the insurance company ratified his conduct and was benefited thereby.    She did not ascertain that she could not collect the insurance money, and therefore was not aware of the falsity of Waldo's representations, until the affirmance by the Supreme Court of the judgment of the city court of Atlanta, dismissing her petition against the insurance company.    She prayed judgment against the defendants for $870.04, the amount of the loss found by the arbitrators, with interest from February 10, 1898, and attorney's fees.

The defendants filed separate demurrers, both general and special, and the court sustained them "on all the general grounds thereof, the grounds of special demurrer not being passed upon." The plaintiff excepted.

*J. L. Travis* and *Westmoreland Brothers*, for plaintiff.
*Slaton & Phillips*, for defendants.

CANDLER, J.   I concur in the judgment rendered, and I also entertain the view (in which all of my brethren do not agree with me) that the alleged misrepresentations relied on by the plaintiff in the court below related exclusively to a matter of law; that they were, at most, merely expressions of the opinion of one of the defendants; and that therefore they are not legally sufficient to support an action of deceit.    In my opinion, this is the overshadowing question in the case; and, with the utmost respect for the views of my brethren, I desire to give expression of my idea of the law which should control the decision.    It is, of course, apparent that the insurance company could do no acts which would render it liable to such a suit as this, except through the medium of an agent;

and everything for which it is sought to hold it liable in the present case is alleged to have been done by Waldo. It follows, therefore, that if, under the allegations of the petition, the plaintiff had no right of action against Waldo, who is charged to have personally made the representations set forth, there could be no recovery against the insurance company, which merely benefited by those representations; and what is said in the discussion which follows as to Waldo applies with equal force to his codefendant, the insurance company. A careful reading of the petition discloses that the only deceit charged against Waldo was a misrepresentation to the plaintiff of the legal effect of her policy and the obligation she had assumed thereunder. It is not alleged that he made any misstatement to her of what stipulations the policy contained; but the whole case rests upon the ground that Waldo falsely represented to the plaintiff that, regardless of the terms of the policy, she would not be required to submit to the company sworn proofs of loss. It affirmatively appears from the petition that the plaintiff was, constructively at least, in possession of the policy. The record is silent as to when she parted with the actual possession of it, but, at all events, she was in law chargeable with a knowledge of its contents and the obligations which it imposed upon her. This is none the less true because she voluntarily parted with the actual possession of the instrument by pledging it as security for a loan. The policy was a contract, by the terms of which she, as well as the company, was bound, and with a knowledge of the conditions of which she was chargeable. It is not contended that any influence was brought to bear upon her to induce her to part with the policy by giving it as collateral security for a loan on the property insured; and her ignorance of its contents, arising, as is alleged, out of the fact that she had parted with the physical possession of it, is in no sense chargeable to either of the defendants. She was in law bound to know its contents. See, on this subject, *Security Ins. Co.* v. *Gober*, 50 *Ga.* 405 (2); *Thomson* v. *Southern Mutual Ins. Co.*, 90 *Ga.* 78; Morrison v. Ins. Co., 69 Tex. 353; Wierengo v. American Ins. Co., 98 Mich. 621; Quinlan v. Providence Ins. Co., 133 N. Y. 356. In the last-cited case, it appeared that the plaintiff had an arrangement with the agent of the insurance company, by which "his policies were left in charge of the latter, who was to attend to the plaintiff's interests in case of any loss by fire." On the trial the plaintiff

testified that he did not read the policy, and was ignorant of its conditions.. The court held that it was immaterial whether the plaintiff had read the policy or not; that "the conditions and limitations were a part of the contract, and he was bound to take notice of them, and is not excused upon the plea that he omitted to acquaint himself with the provisions of the policy; and his arrangement with Kelsey [the agent] to take charge of his insurance interests was a matter with which the defendant had no concern." I do not, of course, lose sight of the fact that that was an action on the policy of insurance, while this is an action of deceit; but the principle announced by the language quoted is directly applicable to the point now under consideration, viz., that Mrs. Hart was chargeable with knowledge of all the conditions imposed upon her by the terms of her policy.

Presuming, then, a knowledge on the part of the plaintiff of the conditions of her policy, we come to consider whether she can recover on the ground that Waldo misrepresented to her the legal effect of that instrument and her obligations thereunder. In the case of Slaughter's Administrator v. Gerson, 13 Wall. 379, it is laid down that the misrepresentation which will vitiate a contract of sale, and prevent a court of equity from aiding its enforcement, must relate to a material matter constituting an inducement to the contract, and respecting which the complaining party did not possess at hand the means of knowledge; and that "where the means of knowledge are at hand and equally available to both parties, and the subject of purchase is alike open to their inspection, if the purchaser does not avail himself of these means and opportunities, he will not be heard to say, in impeachment of the contract of sale, that he was deceived by the vendor's misrepresentations." In the opinion Mr. Justice Field says: "The neglect of the purchaser to avail himself, in all such cases, of the means of information, whether attributable to his indolence or credulity, takes from him all just claim for relief." The case of Ætna Ins. Co. v. Reed, 33 Ohio St. 283, was an action upon two policies of insurance. The defendant pleaded a release by the plaintiff, the consideration of the alleged release being very much less in amount than the amount of the policies. The plaintiff admitted signing the release, but claimed that his signature was induced by the fraudulent misrepresentation of the agent of the insurance company, to the effect that

certain stipulations in one of the policies were void and not bind-ing upon the insurance company.　As to this point the court ruled : " Where an agent of an insurance company makes representations to one having a claim for a loss against the company, the parties standing in antagonistic relations to each other, that the latter had no claim or rights that he could enforce by legal proceedings, such representations are only opinion — representations upon which he had no right to rely; and if he does so rely, it must be at his own risk, because the truth or falsehood of such representations could be ascertained by ordinary diligence."　In the opinion the court say that " misrepresentations, touching a party's legal rights, will generally afford no sufficient reason on which to avoid a contract. Such representations, however erroneous and strongly asserted, are to be treated, when made to a party free to inform himself of his legal rights, as mere statements of opinion.　The exceptions to the operation of this rule are cases in which some fiduciary relation is found to exist, or such circumstances as show a confidential rela-tion which gives the injured party good right to rely upon such rep-resentations, and he does so to his injury."　In the case at bar, as has been seen, it appears that the plaintiff had equal means with the defendants of informing herself of the contents of her policy and its legal effect, and no confidential or fiduciary relationship is shown to have existed between the parties.　The nearest that the petition comes to making out such a case is in the allegation that the plain-tiff " was a woman, in bad health, and not accustomed to such bus-iness," and that she " trusted him [Waldo], and accepted all his statements as the truth, because she had obtained said policy from him, and knew that he was familiar with the conditions of the same, and considered him a perfect gentleman and an honest man."　This, however, does not furnish any legal reason why the plaintiff should have shut her eyes to the provisions of her policy and relied blindly on the alleged representations of Waldo.　It does not set out the existence of a fiduciary relation between Waldo and herself, nor does it declare a state of facts from which the law will presume such a relation.　Those who are so unfortunate, either from bad health or lack of experience, as to be ignorant of business affairs should rely for advice in such matters upon their known friends, and not upon those who represent conflicting business interests, even though there be every reason to believe that such opposite party in inter-

est is " a perfect gentleman and an honest man." The plaintiff and Waldo were dealing at arm's length, and if she relied upon his representations as to the legal effect of her policy, she did so at her peril. It is well settled that " a court of equity will not afford relief to a party who, with all the means of protecting himself against the imposition of the other party, abandons them and relies on his statements." *Castleberry* v. *Scandrett,* 20 *Ga.* 242. To the same effect see *Newsom* v. *Jackson,* 26 *Ga.* 241, *Baldwin* v. *Daniel,* 69 *Ga.* 783, and the very able opinion of Presiding Justice Lumpkin in *Martin* v. *Harwell,* 115 *Ga.* 156, where, on pages 163 and 164, will be found an array of cases decided by this court, all going to support this proposition.

It is alleged in the petition that after the fire the insurance company, acting through Waldo, secured possession of the policy, and has since retained it, against the wishes and over the protest of the plaintiff. It does not appear, however, that in this either the company or Waldo had any fraudulent intent, or that any fraud was thereby perpetrated upon the plaintiff. The company acquired possession of the policy in the role of an assignee of the plaintiff's mortgage, holding the policy as security for a loan, and, as the assignee of this mortgage and the policy, it has the right to retain the policy until the debt was paid. It is not alleged in the present petition that Waldo entered into a fraudulent scheme, first to misinform the plaintiff as to what were her rights and obligations under the policy, and after that to follow up the attempted fraud by getting physical possession of the policy and keeping it out of her sight, so as to prevent her from acquainting herself with its conditions and from learning that he had falsely represented to her that she had nothing further to do in order to establish her claim against the company. Even if such a scheme had been in the mind of Waldo, and he had actually procured the policy with fraudulent intent to keep it away from the plaintiff, she still would not be entitled to recover, because, under the allegations of her petition, she took no steps whatever to ascertain what were in reality the terms of her policy, but relied implicitly and blindly on Waldo, and no act of his in the way of obtaining and keeping the policy influenced her conduct in the least in neglecting to make proofs of loss, as she had, by her contract with the company, expressly agreed to do. *Judgment affirmed. By five Justices.*