48913. VIRGINIA MUTUAL INSURANCE COMPANY
v. PRICE et al.

PANNELL, Judge.

In September, 1967, one Charlie Susie Bell acquired property from Mr. Jack Morgan and a Mr. G. Byron Davis, described by security deed inter alia, as 503 Briscoe Street, City of Covington, Newton County, Georgia. Coincidentally, a three-year fire insurance policy was issued by Fireman's Fund Insurance Co., through the same Mr. Davis, the vice-president of the Bank of Mansfield, who also engaged in the insurance business. That policy described the property as being issued "on the frame, approved roof, one family dwelling, located corner of Briscoe Street and Cannon Street, Covington, Georgia." The property was subsequently deeded in 1969 by the Bank to Owen Price as purchaser at foreclosure sale, after the death of Charlie Susie Bell. The security deed given by Price again showed the street address as 503 Briscoe Street. Mr. Davis appraised the house for the bank loan purposes "right at $6,000." Following Mr. Davis' retirement from the Bank, and also from his insurance business, a Mr. M. O. Campbell became the Cashier of the Bank. He also engaged in the insurance business, but as a broker. In late March, Mr. Campbell made application to the Steele-Prescott Agency for "renewal" of the fire insurance on Mr. Price's property, utilizing a copy of the expired Fireman's Fund

policy. Mr. Campbell struck the name Charlie Susie Bell as the name of the insured and wrote the name "Owen Price" thereunder. He also wrote in black ink across the face of the application beneath the description of the insured property the words, "Please renew one year name of Owen Price." Mr. Price relied on the Bank and Mr. Campbell to handle his fire insurance matters, except for a small policy which Mr. Price personally had undertaken to obtain from another insurance company, payable to himself and the Bank. Mr. Steele, a partner in the insurance agency for appellant, stated that when the policy application was received from Mr. Campbell it contained the number "4109" written in blue ink under the name "Owen Price." Housing numbers had recently been changed in Covington, but prior to the writing of the insurance policy here concerned, and considerable confusion existed as to the old and new numbers. For example, Mr. Price's new house number 4145 on Briscoe was the same as the old number on the house at the new 4109 Cannon Street. Mr. Steele assumed, perhaps after a telephone call, that the blue ink number, 4109, written on the policy when received from the Bank, represented the number of the house to be insured. He drove to the intersection of Briscoe and Cannon and found a house facing Cannon and adjacent to the intersection with Briscoe Street with that number, but with no name on the mailbox. There was no house number on Price's Briscoe Street house, nor was there a name on the mailbox. Without inquiry of area residents, Mr. Steele took a picture of the residence at 4109 Cannon Street and departed. A Virginia Mutual policy was thereafter prepared for typing by a Mrs. Gassaway in the insurance agency's office, by adding the effective date of the policy, "April 1, 1971," striking part of the old description reading "corner Briscoe Street and," penning the number "4109" below the description to reflect that the new policy would read as it did, "located at 4109 Cannon Street, Covington, Georgia." The original policy was mailed to the bank and a copy mailed to Mr. Price at the Cannon Street address. The latter copy was not received. On receipt of the original policy by the bank, it was removed from the envelope and placed in Mr. Price's file

against the security deed or other bank records, which properly reflected the Briscoe Street address. No check for accuracy was made. The policy remained filed until after the fire about one year later. Shortly after issuance of the policy by appellant's agent, Mr. Campbell was killed during a bank robbery. A few weeks after the fire the bank notified the insurance agency of the loss and asked for payment of the face value of the policy. Virginia Mutual declined payment, and tendered premium plus interest. No evidence of the value of the house at the time of the fire, or the cost of repair to the burned interior was introduced at trial.

Suit was instituted by Owen Price, as owner, and the Bank of Mansfield, as mortgagee, for "specific performance" of a fire insurance policy issued by defendant, Virginia Mutual Insurance Company, which involved a loss to a house owned by Price under mortgage to the Bank, but where the insurance policy sued on described other real property not owned by the plaintiffs which did not burn. A similar suit by the plaintiffs against the defendant agent Steele was, at the conclusion of the evidence, subject to a motion for a directed verdict, which the court granted. A similar motion by Virginia Mutual was overruled by the court. The jury returned a verdict for the plaintiffs in the amount sued for, plus $1,500 for "bad faith" and $2,500 "for legal fees." Thereafter, Virginia Mutual filed a motion in the alternative for judgment n.o.v., or for a new trial. Both motions were overruled and appellant filed its appeal. *Held:*

We think that this case is governed by our decision in *Parris & Son v. Campbell,* 128 Ga. App. 165 (196 SE2d 334). There, plaintiff purchased his various coverages of insurance through Parris & Son, a local agent for United States Fidelity & Guaranty Co. Included, was a three year homeowner's policy for theft coverage, with recovery on any one designated item limited to $1,000. During the period of coverage, the company successfully applied to the Insurance Commissioner which limited recovery to $500 in the aggregate for such losses and approved a new form for use. Upon expiration of the policy, the new policy on the new form was sent by mail, received by

plaintiff and placed still sealed in a filing cabinet with other policies. A subsequent burglary resulted in claim for valuables in the amount of $3,000, but the company offered a reduced amount based on the new policy. Motions for summary judgment were denied and appellants appealed pursuant to a certificate of review. In reversing, this court held at pp. 172, 173: "That the plaintiff-insured was under a duty to examine his policy and ascertain for himself what coverage he had is well settled. [Citations omitted.] It appears that the plaintiff received the policy in the mail and kept it without opening the envelope for something like nine months. Thus, he made no effort, *until after the loss,* to determine what his coverage under the policy was. He was charged by law with knowledge of the coverage [Citations omitted.] The insured was not only free to examine the contract, he was under a duty to do so, and if he had done that he would have observed just what coverage it provided to him. If it was not what he wished to have he could have renegotiated his contract, or, if the company was unwilling to do that, he could have returned it as unacceptable and negotiated a contract with another company. . . '[I]f . . . the policy issued [was] essentially different from the one that the plaintiff desired, the remedy of the plaintiff would have been to reject, when tendered, the policy as written. [Citations omitted.]' *Mitchiner v. Union Central Life Ins. Co.,* 185 Ga. 194, 197 (194 SE 530)." For the same reasons, the appellee-Bank of Mansfield cannot recover and that judgment must be reversed.

As to appellee Price, the copy of the fire insurance policy concerned was mailed to him at the wrong address and no presumption of delivery arises from such mailing. *Laughinghouse v. First of Ga. Ins. Co.,* 123 Ga. App. 189, 190 (179 SE2d 675). His right to recover, therefore, is dependent on the absence of a principal-agent relationship with the Bank. The record reflects that from the time Price bought the house, that he relied on the late Mr. Campbell, as Cashier of the Bank, to handle all the business and that he "didn't go anywhere to take out insurance." It is also evident from the record that Price never checked on his insurance. He purchased the house

from the Bank in February, 1969, but the old insurance policy was not transferred to his name. Further, on its expiration in September, 1970, the property remained uninsured by the bank until April 1, 1971, when Mr. Campbell undertook to "renew" it for one year. We hold in the case sub judice, that the bank was Mr. Price's agent in this connection and that their delicts are chargeable to him. His right to recover, if any, was against the bank. The judgment as to Mr. Price also requires reversal.

*Judgment reversed. Bell, C. J., Eberhardt, P. J., Quillian and Clark, JJ., concur. Deen, Evans, Stolz and Webb, JJ., dissent.*

ARGUED JANUARY 11, 1974 — DECIDED JUNE 25, 1974 — REHEARING DENIED JULY 18, 1974 — 

*Hansell, Post, Brandon & Dorsey, Hugh E. Wright,* for appellant.

*Ballard & Thigpen, W. D. Ballard, George W. Griffeth,* for appellees.

EBERHARDT, Presiding Judge, concurring.

I concur with the opinion of Judge Pannell and with the judgment. Additionally, I would call attention to the fact that although the policy was in possession of the bank, Mr. Price had been free to go there and ascertain the coverage at any time, but did not do so. In *Hart v. Waldo,* 117 Ga. 590 (43 SE 998), Mr. Justice Candler asserted that "The holder of an insurance policy is chargeable with knowledge of its conditions; and this is none the less true where he voluntarily parts with actual possession of the policy by pledging it as security for a loan." See also *Equitable Life Assur. Soc. of the U. S. v. Adams,* 56 Ga. App. 5 (2) (192 SE 90). In *Security Life Ins. &c. Co. v. Gober,* 50 Ga. 404, 412 (2) where the insured purchased a life insurance policy, gave a note for the first premium and the agent was holding possession of the policy until the note should be paid, it was held: "That Gober did not know the precise terms of the policy, if he did not, was his own fault, as he could have known had he applied to the agent for the same." See also *Massey v.*

*Cotton States Life Ins. Co.,* 70 Ga. 794; *Thomson v. Southern Mut. Ins. Co.,* 90 Ga. 78 (1) (15 SE 652).

There is no ambiguity in the policy. It simply describes a house that the insured did not own as the property insured. While the insurer knew nothing as to ownership of the house beyond the representations in the application, no one should have known better what he owned than the insured, and if he had examined the policy he would have discovered that there was no coverage on any house that he owned. A very similar situation on the facts is found in *Stovall v. New York Underwriters Ins. Co.,* 182 Ga. 163 (185 SE 241), where the insured sought a reformation of the policy, which, like that here, was a renewal policy but covering a different house from that which had been originally insured.

DEEN, Judge, dissenting.

I concur with the dissent of Judge Evans for the reasons set forth therein and because of the principles outlined in *Allstate Ins. Co. v. Anderson,* 121 Ga. App. 582 (174 SE2d 591) and *Metropolitan Life Ins. Co. v. Hale,* 177 Ga. 632 (170 SE 875).

EVANS, Judge, dissenting.

The majority opinion declares no insurance coverage was afforded as to the house destroyed by fire, because of an incorrect street number. I respectfully dissent.

1. The incorrect number was placed in the policy by the insurer's agent; the insured gave the agent the correct description of the location of the house. The agent had no excuse whatever for placing the wrong description in the policy.

2. No policy or copy of policy was ever given to the insured prior to the loss by fire; and he had no opportunity of correcting the mistake in description.

3. The incorrect number was immaterial. The house was located at the corner of Briscoe Street and Cannon Street in Covington; *and was the only house the insured owned in the City of Covington.*

4. The verdict for plaintiff should be affirmed; a reversal and a directed verdict for the insurance company should not be rendered in this case.

In September, 1967, Charlie Susie Bell purchased the house in question, and gave a security deed thereon to Bank of Mansfield in Newton County. Byron Davis, a resident of Newton County, was the Executive Vice-President of the Bank of Mansfield, and was also agent for Fireman's Fund Insurance Company. He caused his company to issue a fire insurance policy on the house, described as a "frame house, approved roof, one family dwelling, *located at corner of Briscoe Street and Cannon Street, Covington, Georgia.*"

This court takes judicial notice that the population of the City of Covington, according to the U. S. census for 1970 was 10,267 persons. See *Tift v. Bush,* 209 Ga. 769, 771 (75 SE2d 805). Davis was quite familiar with this location, as he had owned this particular house at one time, and testified it was located at the corner of Briscoe and Cannon Streets in the City of Covington, just as described in the policy.

The bank foreclosed its lien and the property was purchased by Owen Price. Davis retired from the banking and insurance business and was succeeded by M. O. Campbell, who became cashier of the bank and an insurance broker. Campbell requested Steele-Prescott Agency, of Covington, to renew the fire insurance policy on the aforementioned house. Owen Price left the obtaining of insurance to Campbell and the Bank of Mansfield, as the bank was carrying a loan on the property. Both Campbell and Steele-Prescott Agency acted as agents of the insurer, and the commission for writing the policy was divided between them.

An error in the description of the insured house was made by Hugh Steele, partner in the Steele-Prescott Agency, not participated in by any other person except Steele and his secretary. Campbell placed in Steele's hands the existing policy on the house while owned by Charlie Susie Bell, which contained the following description: "On the frame, approved roof, one family dwelling located corner of Briscoe St. and Cannon St., Covington, Georgia." (Tr. p. 308) In the upper left hand corner the words "Charlie Susie Bell" were marked through. Immediately under the description there appeared in pen the numerals "4109" placed there by

Steele's secretary. Below the description of the house, in pen, were written these words: "Please renew one year name of Owen Price." Hugh Steele knew the described house was *at a corner of two streets,* and he testified: "It was a request to write an insurance policy in the name of Owen Price at 4109, *at the corner of these streets."* (Tr. p. 35). Mr. Steele's secretary, who was Mrs. Dorothy Gassaway, testified that she put the numerals "4109" on the old policy, and further that she marked through the words ". . . corner of Briscoe Street and" (Tr. p. 238). Of course, with the numerals "4109" which Mrs. Gassaway had added, and with the striking through of the above words, the description was thus changed to read: "4109 Cannon Street." Therefore, this error in description, in its entirety, is chargeable to Steele, the insurer's agent, and his secretary, without any participation whatever therein by Owen Price, the owner of the insured house.

Steele seemed to entertain some doubts as to the correct description of the house, so he drove to the corner of Briscoe and Cannon Streets and located a house with the number "4109" near the corner. This house was not at the corner of Briscoe Street and Cannon Street, but was separated by a vacant lot from the corner. He did not knock upon a single door of any house to make inquiry as to the correct location and description of the house formerly owned by Charlie Susie Bell, now owned by Owen Price. He took a photograph of the house at 4109 Cannon Street and departed without making any further investigation whatever.

Virginia Mutual Insurance Company issued its policy, mailed the original to Bank of Mansfield and mailed a copy to Owen Price at 4109 Cannon Street, *but which latter copy was never received by Owen Price.* This was not his correct address.

No check or investigation was made by Campbell or Bank of Mansfield for accuracy as to the description of the property, and the policy remained in the bank's file. Mr. Campbell was thereafter killed in a bank robbery; and the house burned about a year after issuance of the policy. Price made a claim on the insurance company for payment, and it refused to pay upon the ground that the house described in the insurance policy — No. 4109

Cannon Street — was not owned by Owen Price.

So far as this record shows, neither Charlie Susie Bell nor Owen Price had ever owned a house in the City of Covington except the house Charlie Susie Bell conveyed to Bank of Mansfield by security deed; and had insured against loss by fire; and which was at the corner of Briscoe and Cannon Streets; which was the same house that Owen Price bought at the aforementioned foreclosure sale; and requested Campbell and Bank of Mansfield to have insured for him. The frame, one-family dwelling, with approved roof, was located at the corner of Briscoe Street and Cannon Street, until the house was burned.

A jury rendered a verdict for the plaintiff, and a majority of this court is now saying that a directed verdict should have been granted to the insurance company. All of the evidence, including all inferences arising from the evidence, must be construed most favorably toward the party opposing the motion for directed verdict, to wit, the plaintiff in this case. See *Curry v. Roberson,* 87 Ga. App. 785 (75 SE2d 282); *Whitlock v. Michael,* 208 Ga. 229 (65 SE2d 797).

Two facts stand out in this case, to wit: 1. The house in question was easily located, it being the only house ever owned by Charlie Susie Bell, and later by Owen Price, in Covington, and it was at the corner of Briscoe and Cannon Streets in the City of Covington. An incorrect number made no difference whatever.

2. The mistake in description was made by the insurance company through its agents, and was made *before the policy was issued.* Owen Price did nothing to mislead the insurance company or its agents. The law which suggests that parties ought to read their policies of insurance in order to be apprised of coverage, has no application here because neither the policy nor a copy was ever in Owen Price's possession. The bank, represented by the insurance broker as its executive vice-president, retained the original in its files, and it was contended that a copy was mailed to Owen Price, but the transcript here shows that *Owen Price never received the copy.* It would have been strange if he had received it, as it was mailed to 4109 Cannon Street, which was not his

correct address.

There are times when an insurance company is not held responsible for the representations and mistakes of its agents. But this is as to those representations or misrepresentations made *after the policy has been issued.* An insurance company is responsible for a mistake or misrepresentation made by its agent *before and at time of the issuance of the policy.* See *Rhodes v. Mutual Benefit Health &c. Assn.,* 56 Ga. App. 728 (2) (194 SE 33); *National Life &c. Ins. Co. v. Cantrell,* 49 Ga. App. 368 (1) (175 SE 543); *Metropolitan Life Ins. Co. v. Hale,* 177 Ga. 632, 634 (170 SE 875).

When an insurance company issues a policy, and at the time of issuance its agent who procures the policy, *knows* certain facts regarding the risk, after loss, the insurance company is estopped to set up as a defense any fact that its agent knew in advance of or at time of issuance of the policy of insurance. *Commercial Union Assurance Co. v. Lyon & Kelly,* 17 Ga. App. 441 (1) (87 SE 761); *Phenix Ins. Co. v. Searles,* 100 Ga. 97 (1, 2) (27 SE 779); *Johnson v. Aetna Ins. Co.,* 123 Ga. 404 (51 SE 339). See also *Rome Ins. Co. v. Thomas,* 11 Ga. App. 539 (3) (75 SE 894): "As to all matters affecting conditions precedent to a contract of insurance, the knowledge of the agent of the insurance company is imputed to the company, and the company is thereby charged with notice of any facts, affecting the risk about to be assumed, which may have come to or rest in the knowledge of its agent, and which good faith in the discharge of his duty as agent would require him to disclose to his principal." *Springfield Fire &c. Co. v. Price,* 132 Ga. 687 (1) (64 SE 1074): "Where a policy of fire insurance contained a stipulation that it should be void if the subject of insurance be a building on ground not owned by the insured in fee simple, but, at the time the application for insurance was made, the company, through its agent, knew that the applicant did not own the land on which the building sought to be insured was situated, the company, in defending an action on the policy, will be estopped from setting up the noncompliance of the insured with this condition of the policy."

The mere incorrect numbering on a house, which is

otherwise sufficiently described, or where *a key to the correct description* is afforded, will not render the description insufficient. See *Copeland v. Carpenter,* 206 Ga. 822-823 (2) (59 SE2d 245): "This court has many times held that, if the descriptive averments of a deed furnish a key by which the land can be definitely located or identified by the aid of extrinsic evidence, the evidence is sufficient to pass title." Also see *Harmon v. First National Bank of Columbus,* 50 Ga. App. 3 (1) (176 SE 833): "A deed which contains an inconsistent description of the property intended to be conveyed will not for that reason be declared void, if the mistaken or erroneous description is such that it can be disregarded and the property identified or sufficiently designated, or if the means of correcting the mistake is furnished from the same deed or other competent evidence.

"(a) A conveyance will not be defeated because of a description therein *which is inapplicable or false if the premises intended to be conveyed clearly appear from any part of it, or can be shown from extraneous evidence."* (Emphasis supplied.) All ambiguities in an insurance policy must be resolved *against* the insurance company. The policy here, solely through the mistake of the insurance company's agent, contained an ambiguity. The house was said to be owned by Owen Price, and it was said to be at 4109 Cannon Street. This is the only house Owen Price owned in Covington, and the ownership of Owen Price is just as much a descriptive term as to the house as is the incorrect numbering. This ambiguity must be resolved against the insurer.

I respectfully dissent from the majority opinion, which would overturn the verdict of the jury, and order a directed verdict for the defendant insurance company. It would be a travesty on justice to allow the insurance company to escape its legal liability in this case.

I am authorized to state that Judges Deen, Stolz and Webb concur in this dissent.