## 66664. WHEELER v. STANDARD GUARANTY INSURANCE COMPANY.

QUILLIAN, Presiding Judge.

Plaintiff/appellant brought an action on an insurance policy issued by the defendant insurance company. He sought recovery for

damages sustained by his Ford pickup truck which he wrecked, as well as for personal injuries sustained in the accident.

After discovery, both parties moved for summary judgment. The trial judge denied the plaintiff's motion for a partial judgment as to liability and granted the defendant's motion, dismissing the plaintiff's complaint. The plaintiff thereupon appealed. *Held:*

The insurance policy in question was issued on December 13, 1979, and had a term of one year or until December 13, 1980. The policy originally covered a Volkswagen van but during the term was changed to cover a 1977 Ford Ranger (described as a pickup truck). The plaintiff wrecked his pickup truck on February 26, 1981. The plaintiff contends that, since he did not receive a notice of nonrenewal at least 30 days prior to the expiration date of the policy nor a manifestation of insurer's willingness to renew, the policy was automatically renewed under OCGA § 33-24-45 (e) (Code Ann. § 56-2430.1) even though he did not pay any premiums for the "renewed" policy.

The defendant makes two contentions. First, it is argued that the pickup truck was used in the plaintiff's business and thus the policy does not fall under the provisions of OCGA § 33-24-45 (b) (2) (B) (Code Ann. § 56-2430.1) which states the section is applicable to "any other four-wheel motor vehicle with a load capacity of 1,500 pounds or less which is not used in the occupation or professional business of the insured . . ." In support of this assertion the defendant relies on the policy which is styled "Commercial" on the original application and is listed on the policy change as "Commercial Policy." The defendant also introduced proof by affidavit of the issuing agent that the policy was so styled because the plaintiff intended to use it in his "pizza" business. The plaintiff argues that the vehicle was used primarily for his personal use and only incidentally for business.

The second contention of the defendant is that it did manifest a willingness to renew within the meaning of OCGA § 33-24-45 (f) (3) (Code Ann. § 56-2430.1) and therefore the policy expired on December 13, 1980, upon the plaintiff's failure to tender any premium.

First of all, whether or not the policy comes under § 33-24-45 (Code Ann. § 56-2430.1) as argued by the parties, of primary concern is the subsection therein which provides an exception to the requirement that notice of nonrenewal be given to the insured. Subsection (f) (3) reads: "Subsection (e) of this Code section [providing for automatic renewal unless certain requirements are met] shall not apply in case of: . . .(3) The insurer having manifested its willingness to renew by delivering a renewal policy, renewal

certificate or other evidence of renewal to the named insured or his representative or by offering to issue a renewal policy, certificate, or other evidence of renewal or having manifested such intention by any other means." OCGA § 33-24-45 (f) (3) (Code Ann. § 56-2430.1).

The insurance policy in this case contained the following language on the last page after the signatures of the officials of the company entitled *"Company's Willingness to Renew Policy:* 'The company hereby agrees that, upon the expiration date of this policy or any renewal thereof, it will renew this policy for a term of 12 months at the premium rate then in effect, provided that prior to any such expiration date (1) the company has not given written notice to the Insured, in accordance with applicable state law and/or the termination provisions of this policy, of cancellation or non-renewal of this policy, and (2) the company or its agent receives from the insured written request for renewal, accompanied by payment of not less than $25 or the amount of the last annual premium shown on this policy or any renewal thereof, whichever is less. If such payment made by the Insured is more than the then applicable annual premium, the company shall promptly refund the difference directly to the Insured or by credit to its agent; if it is less, the company will so notify the Insured and the Insured, promptly upon receipt of notification, shall remit to the company or its agent the additional amount of premium due. All other terms and conditions of this policy remain unchanged.' "

It was established under the predecessor to our present code section (1933 Code Ann. § 56-2430) that notice of the willingness to renew had to be *communicated* to the insured, therefore mere mailing was held to be insufficient. *Garner v. Government Emp. Ins. Co.,* 129 Ga. App. 235 (199 SE2d 350); *Roberts v. American Southern Ins. Co.,* 142 Ga. App. 232 (235 SE2d 660).

Plaintiff testified he did not read the policy. However, the principle is settled that an insured in possession of his policy is chargeable with knowledge of its contents (*Fields v. Goldstein,* 97 Ga. App. 286, 288 (3) (102 SE2d 921), affirmed in *Fields v. Goldstein,* 214 Ga. 277 (104 SE2d 337); *S & A Corp. v. Berger & Co.,* 111 Ga. App. 39, 40 (1) (140 SE2d 509); *Parris & Son v. Campbell,* 128 Ga. App. 165, 173 (13) (196 SE2d 334); *Virginia Mut. v. Price,* 132 Ga. App. 445, 448 (208 SE2d 314); *Northeastern Ins. Agency v. Courson,* 156 Ga. App. 321, 323 (274 SE2d 714); *Security Life Ins. &c. Co. v. Gober,* 50 Ga. 404, 412), and in some cases even where the insured does not have actual possession. *Brown v. Mack Trucks, Inc.,* 111 Ga. App. 164, 166 (141 SE2d 208); *American Liberty Ins. Co. v. Sanders,* 120 Ga. App. 1, 3 (2) (169 SE2d 342). As pointed out in *Equitable Life Assurance Society v. Adams,* 56 Ga. App. 5 (192 SE 90) the failure to read one's

policy "is not sufficient to excuse compliance on his part with the legal conditions and requirements of the policy." *Prudential Ins. Co. v. Sailors,* 69 Ga. App. 628, 634 (26 SE2d 557). Accord, *Richmond v. Ga. Farm Bureau &c. Co.,* 140 Ga. App. 215, 221 (3) (231 SE2d 245).

We therefore find the insurer's willingness to renew was communicated to the plaintiff despite his denial of actually reading the terms of the policy.

Is the method here used a proper one and in compliance with the requirements of the statute? In *Pa. Nat. &c. Ins. Co. v. Person,* 164 Ga. App. 488 (297 SE2d 80) and *Pa. Nat. &c. Ins. Co. v. Person,* 164 Ga. App. 755 (297 SE2d 337) we held that an insurance company could not give notice of cancellation for failure to pay premiums when they became due before the time the premium payments were actually due. Instead this court required that cancellation notice could be given only after the due date. However, that was because of the language in the statute that a policy may be cancelled for failure of the insured to discharge "when due" any of the obligations relevant to payment. This court would not permit an insurance company to anticipate a failure to pay the premium.

In this instance, the statutory language makes no mention of when the notice must be given. Indeed, from its broad sweep, using such all encompassing verbiage as "having manifested such intention by any other means," we are constrained to hold notice such as set out at the terminus of the policy is not precluded. In fact, the main problem as to a violation of, at least, the spirit of OCGA § 33-24-45 (Code Ann. § 56-2430.1) is the requirement that the insured give a written request for renewal. However, we note that in all instances where the insured receives the notice of willingness to renew he must perforce respond. Therefore, this does not place an onerous and additional burden on the insured not contemplated within the framework of the act.

We reiterate that the legislature's failure to impose any time requirement as to when the notice be given may result, as here, in a situation where notice is given simultaneously with the issuance of the policy. This may not be what was actually intended. Nevertheless, any attempt to add a requirement not included in the law would result in speculation as to what was meant rather than ascertainment within the bounds of statutory construction normally employed by our courts in determining legislative intent.

We therefore find compliance with OCGA § 33-24-45 (f) (3) (Code Ann. § 56-2430.1) as drawn. Thus, the insured cannot complain that the policy lapsed since he failed to properly respond to the

insurer's manifestation of willingness to renew.
*Judgment affirmed. Sognier and Pope, JJ., concur.*

Decided September 9, 1983 —
Rehearing denied October 24, 1983. —

*William U. Hyden, Jr.,* for appellant.
*Richard B. Eason, Jr., Carolyn J. Kennedy,* for appellee.

On Motion for Rehearing.

Movant urges that we have overlooked OCGA § 33-24-45 (j) (Code Ann. § 56-2430.1) and our holding in *Concord Group Ins. Co. v. Terry,* 130 Ga. App. 13, 14 (202 SE2d 471). What movant overlooks is that OCGA § 33-24-45 (j) (Code Ann. § 56-2430.1), which provides for the notification of the insured of his possible eligibility for insurance in the Georgia Automobile Assigned Risk Plan, only comes into play where a notice of intention not to renew under OCGA § 33-24-45 (e) (Code Ann. § 56-2430.1) must be given. This is evident from the language of OCGA § 33-24-45 (j) (Code Ann. § 56-2430.1) which provides: "Such notice shall accompany or be included in the notice of cancellation or the notice of intent not to renew or not to continue the policy." Notice, of course, need not be given where "the insurer . . . manifested its willingness to renew . . ." under OCGA § 33-24-45 (f) (3) (Code Ann. § 56-2430.1). This is true for the reason that where the insurance company manifests its willingness to renew under that section it does not cancel the policy, but subsequently, in effect, the insured cancels the policy by his inaction or his failure to accept the insurer's offer.