**FIRST DIVISION**
**BARNES, P. J.,**
**MILLER, P. J., and BROWN, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**November 1, 2022**

# In the Court of Appeals of Georgia

A22A1113. HILL v. KEMP.

BARNES, Presiding Judge.

Victor K. Hill appeals the denial of his petition for a writ of mandamus to compel Governor Brian P. Kemp to reinstate him to public office. As explained below, we affirm.

The record shows the following. While serving as the Sheriff of Clayton County, Hill was charged on April 19, 2021 with felony crimes in the United States District Court for the Northern District of Georgia, Atlanta Division. On June 2, 2021, and pursuant to OCGA § 45-5-6,[1] Governor Kemp signed an executive order

---

[1] OCGA § 45-5-6 (c) (authorizing the Governor to "suspend the public officer [under indictment for a felony by a grand jury of this state or by the United States] from office immediately and without further action pending the final disposition of the case or until the expiration of his or her term of office, whichever occurs first").

suspending Hill from office "pending the final disposition of the case or until the expiration of his term of office, whichever occurs first." Hill pled not guilty to the felony charges,[2] invoking his right to a jury trial.

After a period of time, on September 29, 2021, Hill requested Governor Kemp to terminate the suspension, citing OCGA § 45-5-6 (i) (hereinafter, the "reinstatement provision"). The reinstatement provision states in full:

> If a public official who is suspended from office under the provisions of this Code section *is not first tried at the next regular or special term following the indictment*, the suspension shall be terminated and the public official shall be reinstated to office. The public official shall not be reinstated under this subsection if he or she is not so tried based on a continuance granted upon a motion made only by the defendant.

(Emphasis supplied.) According to Hill, the contemplated time period (as italicized above) had elapsed such that he was entitled to reinstatement as of September 3, 2021.[3] Governor Kemp rejected Hill's request.

---

[2] On August 5, 2021, a grand jury in the Northern District of Georgia returned a superseding indictment against Hill, charging him with an additional count.

[3] See generally *Eaves v. Harris*, 258 Ga. 1, 3-4 (2) (b) (364 SE2d 854) (1988) (discerning that "the suspended official is safe-guarded under [OCGA § 45-5-6] from prosecutorial foot-dragging, so that if he is not promptly tried he is restored to office").

On October 13, 2021, Hill petitioned the Superior Court of Fulton County for a writ of mandamus ordering Governor Kemp to comply with the reinstatement provision, specifically by terminating the suspension and reinstating him to the office of county sheriff.

Mandamus is "an extraordinary remedy to compel a public officer to perform a required duty when there is no other adequate legal remedy." (Citation and punctuation omitted.) *R. A. F. v. Robinson*, 286 Ga. 644, 646 (1) (690 SE2d 372) (2010). "The writ of mandamus is properly issued only if (1) no other adequate legal remedy is available to effectuate the relief sought; and (2) the applicant has a clear legal right to such relief." (Citation and punctuation omitted.) *Ga. Assn. of Professional Process Servers v. Jackson*, 302 Ga. 309, 312 (2) (806 SE2d 550) (2017). Further, "[f]or mandamus to issue, the law must not only authorize the act to be done, but must require its performance. Where performance is required by law, a clear legal right to relief will exist either where the official or agency fails entirely to act or where, in taking such required action, the official or agency commits a gross abuse of discretion." (Citation and punctuation omitted.) Id. at 312-313 (2). See also OCGA § 9-6-21 (a) ("Mandamus shall not lie as . . . to a public officer who has an absolute discretion to act or not to act unless there is a gross abuse of such discretion. However, mandamus shall not be confined to the enforcement of mere ministerial duties."). A gross abuse of discretion occurs where an official performs a discretionary duty in a manner that is arbitrary, capricious, and unreasonable. See *Massey v.*

3

*Ga. Bd. of Pardons & Paroles*, 275 Ga. 127, 128 (2) (562 SE2d 172) (2002).

*Love v. Fulton County Bd. of Tax Assessors*, 311 Ga. 682, 692-693 (3) (a) (859 SE2d 33) (2021).

During the superior court proceedings, Governor Kemp countered that Hill did not show that the reinstatement provision provided him with any clear legal right to the relief requested because, inter alia: (a) Hill was indicted in federal district court, which does not have a "term" of court, and thus the cited provision was not triggered in this case; and (b) delay during the federal prosecution resulted from Hill's own requests for various continuances in his criminal case, and therefore he was not entitled to reinstatement, given the last sentence of the reinstatement provision. Additionally, Governor Kemp argued that the reinstatement provision contained no language requiring him to take any action on behalf of a suspended public official – rather, the provision stated merely that "the suspension shall be terminated and the public official shall be reinstated to office."[4] Furthermore, Governor Kemp argued, Hill had failed to utilize the adequate, alternative remedy of a declaratory judgment action and was thus not entitled to mandamus relief.

---

[4] OCGA § 45-5-6 (i).

The superior court ruled in favor of Governor Kemp and denied Hill's petition. Hill appeals.

1. Hill contends that the superior court erred in denying his petition for a writ of mandamus, maintaining that he has a clear legal right to be reinstated to his elected position as Sheriff of Clayton County. Hill claims that the "plain language of the [reinstatement provision] is mandatory and ministerial"; that given the time lapse, Governor Kemp has no discretion not to terminate the suspension; and that, nevertheless, Governor Kemp "has ignored the statutory language commanding [that he] be restored back into office."

By way of background to this contention (that the contemplated time had elapsed), Hill outlines that as of a 1984 amendment to the statute, OCGA § 45-5-6 provided for the suspension of any public official who was indicted for a felony by a grand jury of *this State*;[5] that such 1984 amendment also enacted the language referenced herein as the reinstatement provision;[6] that the statute was again amended

---

[5] See Ga. L. 1984, p. 1279, § 1. Prior to this amendment, OCGA § 45-5-6 provided for suspension "[u]pon [a county officer's] *conviction* of a felony in any court of this state, of any other state, or of the United States[.]" (Emphasis supplied.) See Ga. L. 1984, p. 1279, § 1.

[6] Ga. L. 1984, pp. 1279-1282, § 1 (enacting OCGA § 45-5-6 (i) so as to provide: "If a public official who is suspended from office under the provisions of

5

in 1986 to encompasses *federal* indictments against any public official;[7] but that – in

Hill's words – "[w]hat was . . . not addressed in [the 1986] amendment was whether

or not the federal indictments would be subjected to the [reinstatement provision]."[8]

As Hill continues, "[T]he Federal Courts do not have a term of court defined," and

therefore, the "United State[s] District Court for the Northern District of Georgia,

Atlanta Division, does not have a term of court." Therefore, Hill goes on to assert, the

superior court should have undertaken a "gap filling analysis" to "ensure[] that the

---

this Code section is not first tried at the next regular or special term following the indictment, the suspension shall be terminated and the public official shall be reinstated to office. The public official shall not be reinstated under this subsection if he is not so tried based on a continuance granted upon a motion made only by the defendant.").

[7] See Ga. L. 1986, pp. 600-601, §§ 1, 2 (revising OCGA § 45-5-6 (b) so as to provide, in pertinent part, for suspension "[u]pon indictment for a felony by a grand jury of this state or by the United States").

Notably, the 1984 amendment had already changed OCGA § 45-5-6 (b) so as to provide for suspension "[u]pon indictment for a felony by a grand jury of this state, which felony indictment relates to the performance or activities of the office of any public official, and *in the case of a sheriff*, any such indictment by this state or *any such indictment by the United States*[.]" (Emphasis supplied.) Ga. L. 1984, p. 1279, § 1. (Hill does not mention that aspect of the 1984 amendment.)

[8] The version of OCGA § 45-5-6 (i) enacted in 1984 has not been substantively changed.

6

rights of the accused are not violated, simply because the drafters of the statute at that time, could not conceivably foresee every possible scenario."

To that end, Hill lays out: "What was . . . not addressed in the amendment was whether or not the federal indictments would be subjected to the [reinstatement provision.] [Hill] will stipulate that there are no terms of court in the federal courts[.]" However, Hill goes on to proffer, "what the federal courts do utilize is . . . referred to as the Speedy Trial Act (STA). The argument can be made that this STA[ ] is a Term of Court equivalent in the state court arena[.]" Hill concedes, however, that he can cite "no federal statute that is directly on point that provides guidance on a restoration to office as a result of a suspension equivalent as found in OCGA § 45-5-6 (i), specifically one that relates to a local, county or state official who has been indicted federally and subsequently suspended from their official duties."[9]

---

[9] In his brief, Hill asserts that the intent underlying the STA for federal courts is similar to the intent underlying the "term of court" system for state courts; he asserts further that the superior court judge presiding over this mandamus action refused to perform a "comparative analysis" because the judge "[knew] that the outcome would have required a ruling in the Appellant's favor." (Hill does not provide any citation to the record or to any legal authority to support these assertions.)

These assertions by Hill fall short of supplying requisite legal argument, which is, "at a minimum, a discussion of the appropriate law as applied to the relevant facts." *Woods v. Hall*, 315 Ga. App. 93, 96 (3) (726 SE2d 596) (2012). See generally *Tolbert v. Toole*, 296 Ga. 357, 363 (767 SE2d 24) (2014) (reiterating that "[i]t is [the

Alternatively, Hill proffers that a "gap filling analysis" could have been performed by utilizing state law. More specifically, Hill asserts that the superior court could have applied either the "term of court" calendar applicable to the Fulton County Superior Court[10] (because this mandamus action was brought in that court) or the "term of court" calendar applicable to the Clayton County Superior Court[11] (because the charged felonies were alleged to have occurred in Clayton County). As Hill calculates, applying either such "term of court" calendar to the time line of his federal prosecution leads to the conclusion that the reinstatement provision was indeed triggered.

Governor Kemp maintains that the superior court correctly determined that the reinstatement provision conferred no clear legal right upon Hill. According to Governor Kemp, had the General Assembly intended for the reinstatement provision

---

appellant's] burden, as the party challenging the ruling below, to affirmatively show error from the record on appeal").

[10] See OCGA § 15-6-3 (3) (providing that the terms of court for the superior court for the Atlanta Judicial Circuit for Fulton County will commence on the first Monday in January, March, May, July, September, and November).

[11] See OCGA § 15-6-3 (10) (providing that the terms of court for the superior court for the Clayton Circuit will commence on the first Monday in February, May, August, and November).

8

to apply as Hill has proffered, it would have included language to do so; but it did not. Governor Kemp thus urges this Court to reject what he describes as Hill's "invitation to step outside the text and plain language of the statute."

We agree that Hill has established no reversible error in the trial court's rejection of his claim of a clear legal right to reinstatement pursuant to the reinstatement provision. Hill's proffers, which we have set out above, "may not be what was actually intended [by the legislature].[12] [And], any attempt to add a requirement not included in the law would result in speculation as to what was meant rather than ascertainment within the bounds of statutory construction normally employed by our courts in determining legislative intent." *Wheeler v. Standard Guar. Ins. Co.*, 168 Ga. App. 565, 568 (309 SE2d 805) (1983). Hill alludes that the language of the reinstatement provision indicates that the General Assembly did not foresee, and thus did not provide for, the specific circumstance where the suspension resulted from a federal indictment; but "[l]egislative silence is a poor beacon to follow in discerning the proper statutory route." (Citations and punctuation omitted.) *State v. Jackson*, 287 Ga. 646, 659 (5), n.8 (697 SE2d 757) (2010).

---

[12] And as noted above, Hill has failed to supply requisite legal argument with respect to one of his proffers. See footnote 9, supra.

When we consider the meaning of a statute, we must presume that the General Assembly meant what it said and said what it meant. To that end, we must afford the statutory text its plain and ordinary meaning, we must view the statutory text in the context in which it appears, and we must read the statutory text in its most natural and reasonable way, as an ordinary speaker of the English language would. (Citations and punctuation omitted.) *Deal v. Coleman*, 294 Ga. 170, 172-173 (1) (a) (751 SE2d 337) (2013).

The common and customary usages of the words are important, but so is their context. For context, we may look to other provisions of the same statute, the structure and history of the whole statute, and the other law – constitutional, statutory, and common law alike – that forms the legal background of the statutory provision in question.

(Citations and punctuation omitted.) *City of Marietta v. Summerour*, 302 Ga. 645, 649 (2) (807 SE2d 324) (2017).

Hill complains to us that "because the language in the statute is silent" where the public official's suspension stems from federal charges, "there is virtually no recourse for [him]." But that complaint does not demonstrate a clear legal right under the reinstatement provision for purposes of this mandamus action.[13] "[U]nder our

---

[13] See generally *City of Marietta*, 302 Ga. at 655 (2) (reciting the principles that courts "must presume that the [General Assembly's] failure to [include certain language] was a matter of considered choice," and that the "General Assembly is

system of separation of powers this Court does not have the authority to rewrite statutes." *State v. Fielden*, 280 Ga. 444, 448 (629 SE2d 252) (2006).[14] "The separation of powers prohibits us from adding a line to a law enacted by the legislature." (Citation and punctuation omitted.) *State v. Riggs*, 301 Ga. 63, 67 (1) (799 SE2d 770) (2017). "Under the doctrine of separation of powers, statutory construction belongs to the courts, legislation to the legislature." (Citation and punctuation omitted.) *E. Ga. Land & Dev. Co. v. Baker*, 286 Ga. 551, 555 (4) (690 SE2d 145) (2010).

Because Hill has failed to establish trial court error as contended here, he has demonstrated no basis to disturb the judgment.

---

presumed to enact all statutes with full knowledge of the existing condition of the law and with reference to it") (citations and punctuation omitted).

We note that Hill advances no constitutional argument. Indeed, although he filed his notice of appeal to the Supreme Court of Georgia, that Court transferred this case to this Court, explaining, among its reasons, that "there is no indication in the record that any constitutional question was raised or ruled on below."

[14] See *Premier Health Care Invs., LLC v. UHS of Anchor, L.P.*, 310 Ga. 32, 49, (3) (f), n.17 (849 SE2d 441) (2020) ("The Georgia Constitution, unlike the United States Constitution, contains an express provision requiring the separation of powers."), citing Ga. Const. of 1983, Art. I, Sec. II, Par. III ("The legislative, judicial, and executive powers shall forever remain separate and distinct; and no person discharging the duties of one shall at the same time exercise the functions of either of the others except as herein provided.").

2. Given our holding in Division 1, supra, we need not address Hill's remaining contentions that Governor Kemp's alternative arguments lacked merit.

*Judgment affirmed. Miller, P. J., and Brown, J., concur*.