73423. REESE INSURANCE ASSOCIATES, INC. v. MID-STATE DRAINAGE PRODUCTS, INC.
(353 SE2d 521)

DEEN, Presiding Judge.

In July of 1977, Reese Insurance Associates, Inc., issued several insurance policies to appellee. An excess coverage or "umbrella" policy was one of the policies issued and is the one around which this action centers. It was delivered to appellee sometime in October of 1977, together with an accompanying letter suggesting that appellee review the policies as to coverage and amounts. A deposit premium of

$2,425 was paid at the time of delivery. The policy had an endorsement attached which provides that the premium shall be subject to annual adjustment based on a rate of $2.155 per $1,000 of total receipts. An estimate of the $1,125,000 of gross receipts for the coming year was provided by appellee at the time the binder was issued and was used as the basis for calculating the premium. Pursuant to the terms of the insurance contract, an audit conducted in July of 1978, on the policy anniversary date, revealed that the company had gross receipts of $2,650,000 for the year. Appellant contended that based upon the audit, the total premium for the umbrella policy was $5,712 and a balance of $3,287 was due on the policy. Appellee disagreed, and this lawsuit resulted as an action to recover the alleged unpaid balance of the premium.

Mid-State contends that Reese, the president of the insurance agency, made certain representations that he could obtain better insurance coverage at a lower rate than a proposal submitted by his prior carrier. Reese admitted that representations as to the overall insurance package were made and that appellee purchased it because its overall program was better than Mid-State's existing coverage and was at a lower price. Holcomb, the president of Mid-State, contends that the representation of a lower price extended to all the policies, individually, and that Reese stated he could beat a competitor's rate of $.67 per $1,000 of gross receipts for the umbrella policy. Appellee defended this action on the alleged prior inconsistent statements of Reese, and contended that the failure to reject the contract as written was due to a failure to read the policy. At trial Holcomb denied that there was any fraud in the procurement of the policies or that the failure to read was caused by any action on Reese's part.

The case was tried before a judge sitting without a jury who ruled in favor of Mid-State. Reese Insurance Associates takes exception to the court's finding that the parties never reached a state of mutual consent to all the terms of the written agreement, the finding that $.67 per $1,000 of gross receipts was the controlling rate for the umbrella policy, and that Mid-State owed Reese nothing. *Held*:

The evidence shows that the policies were delivered in October of 1977, that the audit was conducted in July of 1978, and that Mid-State was billed for the premium difference between the estimated receipts and gross receipts in September of 1978. The amount of the deposit premium was calculated on the estimated gross receipts of $1,125,000 at a rate of $2.155. We must therefore find that there was no evidence to support the trial court's finding of a lack of mutual assent to enter into a contract. Mid-State accepted the policies, and Holcomb admits that he failed to read them. He therefore never rejected them. It was not until after the audit, and the billing based upon it, that he discovered that the premium was higher than he an-

ticipated.

"[T]he principle is settled that an insured in possession of his policy is chargeable with knowledge of its contents. [Cits.]" *Wheeler v. Standard Guaranty Ins. Co.*, 168 Ga. App. 565, 567 (309 SE2d 805) (1983). As in *Barnes v. Mangham*, 153 Ga. App. 540 (265 SE2d 867) (1980); and *Ga. Mut. Ins. Co. v. Meadors*, 138 Ga. App. 486 (226 SE2d 318) (1976), the evidence demands a finding that Holcomb, as president of Mid-State, failed to comply with his legal duty to examine the insurance contract, observe the coverage provided and rates stated, and, if either were incorrect, either to reject the contract as written or to renegotiate the contract with the insurer.

*Judgment reversed. Benham and Beasley, JJ., concur.*

DECIDED JANUARY 5, 1987 —
REHEARING DENIED JANUARY 29, 1987 — ▮▮▮▮▮▮

*Donald M. Comer II*, for appellant.
*Wade M. Crumbley*, for appellee.